UNITED STATES of America ex rel. Duane WOODARD, Attorney General of the State of Colorado, and the State of Colorado, Plaintiffs-Appellants,

v.

Robert M. TYNAN; Arvada Nursing Home, Inc., a Colorado corporation; BTZ Incorporated, a Colorado corporation; Columbine Manor Incorporated, a Colorado corporation; Garden Manor Nursing Home, Inc., a Colorado corporation; Geri-Care, Inc., a Colorado corporation; Lake Manor, Inc., a Colorado corporation, and North Shore Manor, Inc., a Colorado corporation, Defendants-Appellees.

No. 83–1931.

United States Court of Appeals, Tenth Circuit.

March 21, 1985.
Rehearing Granted April 29, 1985.

Gregory C. Smith, Deputy Atty. Gen., Denver, Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Valerie J. McNevin-Petersen, Asst. Atty. Gen., Denver, Colo., with him on the briefs), for plaintiffs-appellants.

Kenneth C. Groves, Denver, Colo. (Philip A. Rouse, Jr., Denver, Colo., with him on the brief), for defendants-appellees.

J. Lawrence Hamil, Denver, Colo. (Joel D. Russman of Hamil Professional Corp., Denver, Colo., with him on the brief), for defendant-appellee North Shore Manor, Inc.

Before LOGAN and McWILLIAMS, Circuit Judges, and BOHANON,* District Judge.

LOGAN, Circuit Judge.

I

This is a civil case filed by the Colorado Attorney General on behalf of the United States and the State of Colorado in federal district court as a *qui tam* proceeding under a federal statute, the False Claims Act, now codified at 31 U.S.C. §§ 3729–3731. Named as defendants were Robert M. Tynan and seven corporate entities involved in the operation of nursing home facilities in Colorado. The Colorado Attorney General alleged in the complaint that the several defendants had filed fraudulent claims against the Colorado Medicaid program, obtaining reimbursements of approximately $120,000 to which they were not entitled. The suit sought double damages and forfeitures under the provisions of the False Claims Act and refund of these overpayments because of fraud.

In the course of the proceeding it became apparent that in order to make its case plaintiff required access to the ordinary business records of the defendant corporate entities. These records had been seized from the defendants pursuant to a search warrant issued by a state court and were the basis for a criminal prosecution in 1979 against Tynan and two other individuals in a Colorado state court. The defendants in the state court criminal proceeding moved to suppress the use of the records on constitutional grounds. On August 20, 1980, a state district court granted this motion, suppressed the use of the records in the state criminal proceeding and ordered the records sealed. The state court judge then sealed her order and instructed the attorneys that they could not discuss any aspect of it with anyone.

The federal district court continued the trial date for the instant case several times to allow the Attorney General time to obtain an order from the state court freeing the records in question for use in the present proceeding. These efforts, however, were unavailing.

When the instant case finally came on for trial, the Attorney General again advised the federal district court that he had been unable to obtain the records in question and that he could not proceed to trial without them. He filed a motion to compel the defendants to consent to release of the records. The federal district court denied this motion. It was in this setting that the federal district court subsequently dismissed the action, on May 31, 1983, noting that although numerous continuances had been granted to the Attorney General to allow him to obtain release of the records

* Honorable Luther L. Bohanon, United States District Judge for the Northern District of Oklahoma, sitting by designation.

from the state court, he had been unable to do so, and, further, that the Attorney General on several occasions had stated that he could not proceed to trial without the records. The initial dismissal was without prejudice, subject to the condition that if no new lawsuit was filed by September 1, 1983, based on a release by the state court of the records the Attorney General claimed he needed, then the dismissal would become one with prejudice. The Attorney General did not file a new suit, and he now appeals the denial of the motion to compel and the order of dismissal with prejudice.

On appeal the Attorney General asserts as grounds for reversal that the federal district court abused its discretion in three particulars: (1) by denying his motion under Fed.R.Civ.P. 34 to compel the defendants in the present proceeding to execute authorizations for release of the seized records; (2) by refusing to hold a hearing and to make an independent inquiry as to whether the seized records were admissible under federal law; and (3) by dismissing the instant action for failure to prosecute.

## II

 The normal procedure in a case like the one before us is for plaintiffs to file a motion under Fed.R.Civ.P. 34 to require the defendants to produce documents that plaintiffs are entitled to discover under usual procedures. If plaintiffs had filed such a discovery request in this case, the defendants would have been unable to produce the disputed documents because a Colorado court held them in its custody and was treating them as sealed grand jury materials. An alternative available in that situation would have been, upon plaintiffs' request, for the federal district court to order the defendants to request permission from the state court maintaining custody of the documents to release those records so that defendants could comply with their discovery obligations in the federal civil proceeding. Such an order would be within the power of the federal district court. *See, e.g., Karlsson v. Wolfson,* 18 F.R.D.

474 (D.Minn.1956). Both federal and Colorado law appear to allow a party's business records held by a grand jury to be withdrawn either upon the consent of the documents' owner or pursuant to a court order after the grand jury has completed its work. *See, e.g., United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960); *Granbery v. District Court,* 187 Colo. 316, 531 P.2d 390, 394 (1975). Another judicially accepted procedure, which we consider less desirable, is for the party seeking the documents related to a grand jury investigation to apply directly to the court with custody of the documents. *See, e.g., In re Grand Jury Matter,* 697 F.2d 511, 512 (3d Cir.1982); *In re Grand Jury Investigation,* 630 F.2d 996 (3d Cir. 1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). Such a direct application for documents should be granted if the records sought are not of the type properly considered confidential grand jury materials. Even if they are part of confidential grand jury materials they might be reachable as explained below.

 Although a court might deny access on another ground, we have little doubt that if the documents sought in the instant case were held by a federal district court in connection with a federal grand jury investigation, the courts would rule that these documents, required to be kept by the defendants in the normal course of their business, are not privileged grand jury materials. Fed.R.Crim.P. 6(e) addresses the maintenance of secrecy of federal grand jury proceedings. The rule is intended to protect only against disclosures "of what is said or what takes place in the grand jury room." *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d at 54. Although documents may come within the proscription against disclosure,

"it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a

lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury."

*Id.; accord In re Grand Jury Investigation*, 630 F.2d at 1000–01; *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382–83 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *In re Grand Jury Impanelled October 2, 1978*, 510 F.Supp. 112, 114–15 (D.D.C.1981); *Capitol Indemnity Corp. v. First Minnesota Construction Co.*, 405 F.Supp. 929, 930–31 (D.Mass.1975). Thus, the Internal Revenue Service is not foreclosed from examining necessary records to determine the tax liability of a taxpayer merely because those records are held by a grand jury. *See In re SJC Manufacturing Corp.*, 479 F.Supp. 647, 651 (E.D.N.Y.1979). Neither should the Colorado Attorney General, acting on behalf of the United States and Colorado, in its capacity as administrator of the Medicaid program, be foreclosed from discovery of the records of a nursing home necessary to determine possible civil liability for Medicaid overpayments merely because those records were at one time submitted to a grand jury investigating criminal culpability.

■ Even if the documents were considered part of federal grand jury materials normally entitled to secrecy, there is no doubt that if the two courts involved were federal courts they would use a weighing process to determine whether the documents should be released. *Douglas Oil*

*Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), considered this situation. There the Supreme Court stated that parties seeking federal grand jury transcripts "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 222, 99 S.Ct. at 1674 (footnote omitted). When the civil case is in one court and the grand jury records are in the custody of another court, *Douglas Oil* details a procedure to be followed. What is described as the "better" practice is for application to be made to the district court having custody of the records. That court makes a written evaluation of the need for continued grand jury secrecy and determines whether the limited evidence before it shows the disclosure to be appropriate. *Id.* at 230, 99 S.Ct. at 1678. That court then sends the materials to the court where the civil case is pending. With its special knowledge of the status of the civil action before it, the latter court then considers the request for disclosure and makes a decision, considering the views of the court having control over the grand jury. *Id.* at 230–31, 99 S.Ct. at 1678–79. With this procedure "both the need for continued secrecy and the need for disclosure [are] evaluated by the courts in the best position to make the respective evaluations." *Id.* at 231, 99 S.Ct. at 1679 (footnote omitted).[1] Had the federal court in this case followed the procedures that *Douglas Oil* recommends,[2] considering that

---

**1.** A recent Supreme Court case indicates that the court with custody of grand jury materials is permitted to look more favorably on a release to government attorneys seeking to bring a civil suit if it finds that such a release is less likely to compromise grand jury secrecy through leakage or improper use. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, ——, 103 S.Ct. 3133, 3149, 77 L.Ed.2d 743 (1983).

**2.** Fed.R.Crim.P. 6(e) was extensively revised in light of *Douglas Oil.* *See* Notes of the Advisory Committee, 1983 Amendment. Rule 6(e)(3)(C)(i) specifically recognizes the propriety of disclosure "when so directed by a court

preliminarily to or in connection with a judicial proceeding." *Cf. United States v. Baggot,* 463 U.S. 476, ——, 103 S.Ct. 3164, 3167, 77 L.Ed.2d 785 (1983) (construing the scope of this provision). Rule 6(e)(3)(D) & (E) describe specific procedures for such disclosure, based on *Douglas Oil's* "better" practice. The initial request is filed in the district court where the grand jury convened. *Id.* at (D). The proceeding is then transferred to the federal district court giving rise to the petition unless the court connected to the grand jury "can reasonably obtain sufficient knowledge of the proceeding to determine whether disclosure is proper." *Id.* at (E).

the grand jury has long since been discharged and that the materials are indispensable to the civil proceeding, it likely would have required the disclosure of these documentary records, unless it found that plaintiffs abused the grand jury process to make their civil case. *See Capitol Indemnity Corp.*, 405 F.Supp. at 931. Such a finding of abuse is not made easily. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 683–84, 78 S.Ct. 983, 986–88, 2 L.Ed.2d 1077 (1958).

### III

The key question in the instant case is whether a different result is required because the records are in the custody of a state court with respect to a state grand jury. We think not. The Attorney General did not follow the normal Rule 34 discovery procedures until late in the proceedings when he made a request that defendants be ordered to ask for return of their records from the state court. But he did follow the alternative procedure, at the suggestion of the federal court, applying directly to the state court for access to these documents. The state court judge having custody of the records ruled against the request. Because the state court judge refused to divulge even her own opinion and ordered the attorneys not to discuss any aspect of it, we cannot ascertain the basis of the determination. But from what we have we surmise that the judge thought that Colorado law required these documents to be considered part of the grand jury proceedings and to be kept sealed. R. I, 181–82. The Attorney General made great efforts to get the state court to rule otherwise. He took various appeals and special writ cases to appellate courts within the state court system attempting to override the state judge's decision. It must now be regarded as conclusively decided by the law of the case that Colorado law requires these documents be kept secret. But that does not resolve the issue.

The Attorney General's claim arises under federal law, and so the privileged nature of these materials under state law is not controlling. *See Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir.1980). *Socialist Workers Party* is closely analogous to the case at bar. There the court considered a state secrecy requirement under Illinois law. It analyzed the state purposes for secrecy as being similar to the purposes under Fed.R. Crim.P. 6(e), considered the principles of comity, and suggested that the proper procedure is to seek a disclosure order from the state court first. *Id.* at 644. It then stated:

"As we have already noted, of course, federal law determines the scope of the privilege covering these materials, and the requirement that these plaintiffs first seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in this federal civil rights case. This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered. On the other hand, although the state court may determine that the materials are privileged under state law, only the federal court may determine whether the materials are privileged under federal common law. In this way the federal interest in disclosure will be properly considered preliminarily to a final decision on the privilege issue. *See Douglas Oil, supra,* 441 U.S. at 227–28, 99 S.Ct. at 1677. The federal court will be more familiar than the state court with the pending litigation and thus will be more familiar with the needs of the party requesting them.

In the event the plaintiffs are unsuccessful in obtaining disclosure in the state court, the federal district court very well may have to take custody of the grand jury materials and rule on

When a proceeding is transferred, the court supervising the grand jury sends the requesting court both the materials sought to be disclosed and a written evaluation of the need for continued grand jury secrecy. The receiving court then makes the final decision on release. *Id.*

specific requests for disclosure, taking into account the need for secrecy developed during the state disclosure proceeding."

*Id.* at 644–45 (citations omitted).

■ We agree with the Seventh Circuit's approach. A state order cannot foreclose a federal court from access to materials if a federal district court determines that disclosure is essential in a case properly before it. In such a case the federal district court should order the state trial court to transmit to it the materials for examination *in camera* and treatment in accordance with the procedures set out in *Douglas Oil. Lucas v. Turner,* 725 F.2d 1095, 1109 (7th Cir.1984), ordered this sort of remedy for evidence recognized to be grand jury materials subject to disclosure only upon a showing of particularized need.

In *Lucas,* which involved a request for state grand jury materials in federal court, the court applied Fed.R.Crim.P. 6(e) principles by analogy, and we think this is generally appropriate because Rule 6(e) embodies the federal policy favoring secrecy of federal or state grand jury records. In *Douglas Oil,* the Supreme Court noted "several distinct interests" served by safeguarding the confidentiality of grand jury proceedings:

> "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."

441 U.S. at 219, 99 S.Ct. at 1673 (footnote omitted). None of these interests appear to be significant in the instant case, although it is difficult to be certain of this until the federal district court examines the materials and the state court's reasons for sealing them. In *Douglas Oil,* the Supreme Court reaffirmed the view that grand jury materials should be disclosed when the enumerated secrecy interests are not involved. *Id.* at 221, 99 S.Ct. at 1674 (quoting *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966)). Colorado's rule and rationale for secrecy appears to be analogous to these federal principles, although it is, as yet, less clearly explicated by statute, court rule and case law. *See* Colo.Rev.Stat. § 16–5–205(4); Colo.R.Crim.P. 6.7, 6.9; *Charnes v. Lilly,* 197 Colo. 460, 593 P.2d 967 (1979). We are uncertain what was the basis for the state court's denial of access in the instant case, but it may have interpreted the state rule to require a different approach than that taken by the federal cases. If that is so, federal law must control, but only after the federal district court engages in the weighing process recommended in *Douglas.*

■ In the case before us the district judge did not order the transmittal of the materials or the disclosure. Hence we must determine whether this was pursuant to an exercise of informed discretion of the district judge. As noted in *Douglas Oil,* the district court has considerable discretion in this matter. *See* 441 U.S. at 229–30, 99 S.Ct. at 1678–79. Nevertheless, we cannot uphold the district court's action in dismissing the case as a proper exercise of the court's discretion. Our reading of the record indicates that the district court did not understand that it had the power to order the release of the state court records. The district court decision could not have been based upon a weighted consideration of the reasons the state court sealed the records and refused to release them, because the state court did not disclose to the federal court the reasons for its order. Although this case was not handled in the best possible manner by the plaintiffs, we think their actions were sufficient to fulfill their responsibility.

Therefore, we reverse the order of dismissal and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

McWILLIAMS, Circuit Judge, dissents.

I must respectfully dissent. The result reached by the majority opinion points toward an unwarranted intrusion by the federal judiciary into a state court proceeding. I take no exception to section I of the majority opinion, which is simply a recital of background material. However, I respectfully disagree with sections II and III, and would decide as follows on the three matters urged by the appellant as error.

As the majority opinion states, the *only* issue in the case is whether the district court abused its discretion. By arguing that the federal district court abused its discretion, the Attorney General necessarily admits that in each of its rulings the federal district court had discretionary power.[1] In other words, the Attorney General does not argue that the federal district court was *required* or somehow *compelled* to rule in the manner sought by the Attorney General. Hence, the Attorney General, of necessity, must argue that the federal district court had the discretion to either grant or deny its two interlocutory requests, and, further, had the power, discretionary as it was, to dismiss the action, but that in each instance the ruling of the federal district court was so arbitrary and capricious as to constitute an abuse of such discretionary power. *Lawrence v. Willingham*, 373 F.2d 731, 732 (10th Cir.1967) (to be an abuse of discretion the action must be "arbitrary and capricious"); *Harring-*

ton v. *DeVito*, 656 F.2d 264, 269 (7th Cir. 1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982) ("Appellate review of a district court's discretion is very limited. Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court"). This places a heavy burden on the Attorney General, which, in my view, he has not met.

In an effort to obtain the records which were the subject of the state court's order of suppression and secrecy, the Attorney General sought an order from the federal district court which would compel the defendants in the federal proceeding to go into the state district court and there consent to a release of the records. *See* Fed. R.Civ.P. 34, 37(a). In denying this request the federal district court noted that the records in question were no longer in the possession, custody or control of the defendants, but, on the contrary, were in the custody of the state court. The federal district court stated that the records were subject to a "valid state order suppressing access to them" and that in such circumstance the defendants could "neither consent nor be ordered to consent to the release of those records." For the trial court to hold that records subject to a protective order by a state court, violation of which would be in contempt of court, are not within a party's "possession, custody or control," is certainly not an abuse of discretion. *See Nissei America, Inc. v. Cincinnati; Milacron, Inc.*, 95 F.R.D. 471 (N.D. Ill.1982) (holding that documents subject to protective order issued by the International Trade Commission, a federal agency, were

1. It should be noted that: 1) Fed.R.Civ.P. 34 vests a trial judge with broad discretion. Wright & Miller, *Federal Practice and Procedure* § 2215 at 653 (1970). *See Williams v. Continental Oil Co.*, 215 F.2d 4 (10th Cir.1954), *cert. denied*, 348 U.S. 928, 75 S.Ct. 341, 99 L.Ed. 728 (1955).

2) A trial judge "called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). We recognize that

in *Douglas Oil*, a federal court was making such a decision; whereas in the instant case, a state court made the decision. Nonetheless, implicit in the *Douglas Oil* balancing test is substantial discretion as to the release of grand jury records as a matter of federal law.

3) A trial judge's decision to dismiss a case for failure to prosecute is discretionary. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

Therefore, it appears that all of tahe court's rulings below were within its discretionary powers.

not within a party's "possession, custody or control"). Moreover, for the federal district court to compel the defendants in the instant case to go into state court and consent to a release of the records would be an unwarranted intrusion by the federal judiciary into a state court proceeding. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970) (state and federal judicial systems operate "independently"); *Buckley Towers Condominium, Inc. v. Buchwald*, 595 F.2d 253, 254 (5th Cir.1979) ("we have no general power to supervise state court proceedings or to correct errors of law that may occur from time to time in their course").

The Attorney General also asked the federal district judge to conduct a hearing and determine for himself the admissibility under federal law of the records subject to the secrecy order. Apparently, though I am not certain, the Attorney General either has copies of the records subject to the secrecy order, or knows their contents, but is fearful that by using such in the federal proceedings he might be held in contempt by the state court for violating its secrecy order. In any event, the federal district judge declined to hold such a hearing, and, in my view, in so doing he did not abuse his discretion.

The majority opinion holds that under *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) and *Socialist Worker's Party v. Grubisic*, 619 F.2d 641 (7th Cir. 1980),[2] the federal district court should order the state court to turn over the grand jury materials and should then weigh the need for disclosure against the need for continued secrecy. In *Douglas Oil*, the U.S. Supreme Court stated that the preferable practice is to have the court which supervised the grand jury determine

whether there is a continued need for secrecy, and if not, for the court in the civil case to determine whether there is a need for disclosure. *Id.* at 230–31, 99 S.Ct. at 1678–79. However, *Douglas Oil* was expressly limited to cases where the court "having custody of the grand jury records is unlikely to have dependable knowledge of the status of, and the needs of the parties in, the civil suit in which the desired transcripts are to be used." *Id.* at 231, 99 S.Ct. at 1679. The door was left open for cases where the court having custody of the grand jury materials "will be able, intelligently, on the basis of limited knowledge, to decide that disclosure is plainly inappropriate." *Id.*

*Douglas Oil* concerned procedures between separate federal trial courts; when one of the court's involved is a state court, as here, an additional dimension, that of comity, is added to the problem. I believe federal courts should be hesitant to apply decisions such as *Douglas Oil* to controversies involving state courts. Nonetheless, what guidance *Douglas Oil* does provide suggests that a proper procedure was used in the instant case, and that the interests of secrecy and disclosure were adequately balanced by the state trial court. Although in the instant case the state trial judge did not supervise the grand jury, she was held by the Colorado Court of Appeals to be in a "better position" than the judges who supervised the grand juries "to determine whether documents were grand jury documents and whether they should be disclosed." *State v. Tynan*, Slip Opinion at 3 (Colo.App. November 8, 1984). Moreover, the state trial judge was well aware of the federal civil proceedings, as evidenced by her submittal of affidavits to the federal court as to the extent of her protective order. Thus, the instant case is unlike *Douglas Oil* where the trial judge having custody of the records was "largely igno-

---

2. *Socialist Workers Party v. Grubisic*, 619 F.2d 641 (7th Cir.1980) is distinguishable. In *Socialist Workers* no state court had issued a protective order; rather the issue was whether a state statutory privilege applied in federal court. Thus, the federal court was not clearly contra-

vening a state court order. The issue there was the effect of a state law privilege on a federal court's power to order disclosure of grand jury materials; the issue here is the effect of a state court protective order on a federal court's power to order disclosure of grand jury materials.

rant" of both the civil case and the grand jury proceedings and was characterized by the U.S. Supreme Court as having "no knowledge whatsoever of the facts underlying either the criminal or civil proceedings. . . ." *Douglas Oil,* 441 U.S. at 229, n. 18, 99 S.Ct. at 1678, n. 18. Rather, it appears that this is a case where the criminal court "will be able intelligently, on the basis of limited knowledge, to decide that disclosure [in the civil case] is plainly inappropriate." *Douglas Oil,* 441 U.S. at 231, 99 S.Ct. at 1679. Thus, I do not believe that the federal district court erred in refusing to hold an independent hearing to determine the admissibility of the grand jury materials.

As his final argument, the Attorney General claims that the federal district court abused its discretion in dismissing the action. Under the circumstances, I find no such abuse. The Attorney General was granted several continuances to give him the opportunity to convince the state court that the secrecy order should be lifted. The state district court, however, refused to lift the order, and its ruling has recently been upheld by the Colorado Court of Appeals. *State v. Tynan,* Slip Opinion (Colo. App. November 8, 1984). The Attorney General repeatedly advised the federal district court that he could not proceed to trial unless he could make use of the records subject to the secrecy order. The federal proceeding cannot be continued *ad infinitum* on the chance that some day in the distant future the secrecy order may be lifted.

In closing, I reemphasize my belief that a state court protective order is entitled to the respect of the federal courts. State court judgments are entitled to such "full faith and credit in every court within the United States . . . as they have by law and usage in the courts of such state." 28 U.S.C. § 1738. As stated by the U.S. Supreme Court, "[t]he federal courts . . . have . . . consistently accorded preclusive effect to issues decided by state courts," noting that such a practice "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the feder-

al system." *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 (1980). I believe the decisions of the Colorado trial court and Colorado Court of Appeals, holding that the records are grand jury materials entitled to secrecy, should be respected by the federal courts.