THOMAS H. HAJECATE AND DOROTHY A. HAJECATE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 498-81—500-81, 1250-82, 1251-82, 792-83—795-83, 6809-83, 626-85.    Filed February 17, 1988.

---

[1]Cases of the following petitioners have been consolidated: Thomas H. Hajecate and Dorothy A. Hajecate, docket Nos. 498-81 and 1251-82; Thomas M. Hajecate and Kitten I. Hajecate, docket Nos. 499-81, 1250-82, and 626-85; Linda L. Burch, docket No. 500-81; Thomas H. Hajecate, docket No. 792-83; Dorothy A. Hajecate, docket No. 793-83; Thomas M. Hajecate, docket No. 794-83; Kitten I. Hajecate, docket No. 795-83; Texas Independent Oil Company, docket No. 6809-83.

A related case at docket No. 37360-85 in which Thomas H. Hajecate and Dorothy A. Hajecate were the petitioners was settled on May 18, 1987.

*George W. Connelly* and *Ruth E. Salek,* for petitioners in docket Nos. 498-81, 499-81, 1250-82, 1251-82, 792-83, 793-83, 794-83, 795-83, and 626-85.
*Richard Champion,* for petitioner in docket No. 500-81.[2]
*Melanie R. Urban,* for respondent.

### OPINION

WILLIAMS, *Judge:* These consolidated cases are before us on petitioners' motion for determination of respondent's access to grand jury materials. The Commissioner determined the following deficiencies in income tax and additions to tax against petitioners:

| Name of petitioner | Docket No. | Year | Deficiency | Additions to tax Sec. 6653(a)[3] | Sec. 6653(b) |
|---|---|---|---|---|---|
| Thomas H. and Dorothy A. Hajecate | 498-81 | 1976 | $2,411,821 | --- | $1,205,911 |
| Thomas M. and Kitten I. Hajecate | 499-81 | 1976 | 6,946,748 | --- | 3,473,374 |
| Linda L. Burch [4] | 500-81 | 1976 | 5,143 | --- | --- |

[2]There is no one representing petitioner Texas Independent Oil Co. in docket No. 6809-83. Respondent has been unable to contact a representative of petitioner since its petition was filed on Mar. 28, 1983, and believes that Texas Independent Oil Co. no longer exists.

[3]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[4]Respondent also determined an addition to tax of $90 in docket No. 500-81 pursuant to sec. 4973, representing an excise tax of 5 percent on the excess contributions to petitioner Linda L. Burch's individual retirement account. Petitioner conceded this issue in her petition.

| Name of petitioner | Docket No. | Year | Deficiency | Additions to tax | |
| --- | --- | --- | --- | --- | --- |
| | | | | Sec. 6653(a) | Sec. 6653(b) |
| Thomas M. and Kitten I. Hajecate | 1250-82 | 1977 | $9,256,487 | --- | $4,834,859 |
| Thomas H. and Dorothy A. Hajecate | 1251-82 | 1977 | 3,243,678 | --- | 1,786,364 |
| Thomas H. Hajecate | 792-83 | 1978 | 9,874,056 | --- | --- |
| Dorothy A. Hajecate | 793-83 | 1978 | 9,874,056 | --- | --- |
| Thomas M. Hajecate | 794-83 | 1978 | 27,667,752 | --- | --- |
| Kitten I. Hajecate | 795-83 | 1978 | 27,667,752 | --- | --- |
| Texas Independent Oil Co. [5] | 6809-83 | 8/31/78[1] | 36,249,260 | --- | 18,124,630 |
| Thomas M. and Kitten I. Hajecate | 626-85 | 1980 | 155,853 | $7,792.65 | --- |
| | | 1981 | 565,775 | 28,288.75 | --- |

[1]Fiscal year.

The issues we must decide are (1) whether transcripts of grand jury proceedings and business records of the Hajecates that were submitted to several grand juries and later provided to respondent are "matters occurring before the grand jury," the disclosure of which is prohibited without a valid court order under rule 6(e), Federal Rules of Criminal Procedure; (2) if so, whether the rule 6(e) orders pertaining to the use of these materials, which fail to satisfy the requirements of the Supreme Court's decisions in *Baggot* [6] and *Sells*,[7] have prospective effect; and (3) whether respondent's proposed use of these materials to prepare for trial, to rebut petitioner's case-in-chief and to prove fraud constitutes a new use or disclosure for which a new rule 6(e) order is required.

The relevant facts are not in dispute. At the time they filed their petitions, all of the petitioners resided or had their principal place of business in Texas.

Thomas H. Hajecate is the father of Thomas M. Hajecate. Dorothy A. and Kitten I. Hajecate were the spouses of father and son, respectively, when the petitions were filed. Thomas H. and Thomas M. were major shareholders in Uni Oil Co., which eventually changed its name and ownership and became Texas Independent Oil Co., a subchapter S

---

[5]By order dated Feb. 25, 1987, the Court dismissed for failure to properly prosecute that portion of the petition at docket No. 6809-83 seeking a redetermination of a deficiency and addition to tax for underpayment of estimated tax pursuant to sec. 6654(a). See Rule 123, Tax Court Rules of Practice and Procedure. Thus, only the addition to tax for fraud remains before the Court.

[6]*United States v. Baggot,* 463 U.S. 476 (1983). (*Baggot.*)

[7]*United States v. Sells Engineering, Inc.,* 463 U.S. 418 (1983). (*Sells.*)

corporation. Thomas H. and Thomas M. were also share-holders of Hajecate & Associates, Inc., a subchapter S corporation. Linda L. Burch was an employee of the Hajecates and a shareholder of Hajecate & Associates, Inc.

During the late 1970s, a number of taxpayers including the Hajecates were targeted for grand jury investigation of possible Department of Energy regulation violations. In March 1979, October 1979, and March 1981, the U.S. attorney's office for the Southern District of Texas obtained orders under rule 6(e) of the Federal Rules of Criminal Procedure (the rule 6(e) orders) from the U.S. District Court for the Southern District of Texas, Houston Division. The rule 6(e) orders permitted respondent to examine transcripts of testimony and books and records relating to the Hajecates' business operations obtained from several grand juries to determine whether any civil tax liabilities might arise therefrom. Respondent relied on the information obtained through the rule 6(e) orders in determining the deficiencies and additions to tax at issue in these cases (but see note 13 *infra*).

After respondent examined the materials provided to the grand juries and the transcripts of the grand jury proceedings, the Federal Bureau of Investigation (FBI) took custody of them, and until November 1986, respondent lost track of the materials. The FBI was holding more than 70 boxes of materials. Respondent has now obtained physical custody of the more than 70 boxes of grand jury information, transcripts, and documents relating to the Hajecates, but neither respondent nor petitioners know precisely what is in the boxes.

Respondent issued notices of deficiency and petitioners timely filed their petitions on the following dates:

| Docket No. | Date notice of deficiency issued | Date petition filed |
|---|---|---|
| 498-81 | 10/14/80 | 1/12/81 |
| 499-81 | 10/14/80 | 1/12/81 |
| 500-81 | 10/14/80 | 1/12/81 |
| 1250-82[8] | 10/14/81 | 1/18/82 |

[8]On Mar. 12, 1982, respondent filed a motion to dismiss for lack of jurisdiction in docket Nos. 1250-82 and 1251-82 on the ground that the petitions were not timely filed pursuant to sec. 6213(a) or sec. 7502. We held a hearing on respondent's motion at Washington, D.C., on May 12, 1982. By order dated May 19, 1982, we held that the petitions were timely filed

| Docket No. | Date notice of deficiency issued | Date petition filed |
|---|---|---|
| 1251-82 | 10/14/81 | 1/18/82 |
| 792-82 | 10/14/82 | 1/11/83 |
| 793-83 | 10/14/82 | 1/11/83 |
| 794-83 | 10/14/82 | 1/11/83 |
| 795-83 | 10/14/82 | 1/11/83 |
| 6809-83 | 12/29/82 | 3/28/83 |
| 626-85[9] | 10/09/84 | 1/09/85 |

Rule 6(e) of the Federal Rules of Criminal Procedure (rule 6(e)) codifies the traditional rule of secrecy of grand jury proceedings and provides in relevant part:

(e) Recording and Disclosure of Proceedings.

\* \* \* \* \* \* \*

(2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) Exceptions.

\* \* \* \* \* \* \*

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

Respondent first contends that the records that were the subject of the rule 6(e) orders are not "matters occurring before the grand jury." If they are not, then rule 6(e) is inapplicable, and respondent does not need a court order to inspect or use them.[10]

The purpose of rule 6(e) is to protect the "essence of what takes place in the grand jury room," including the identities of witnesses or jurors and the substance of the investiga-

---

within the meaning of sec. 7502(b) and sec. 301.7502-1(c)(1)(iii)(b), Proced. & Admin. Regs., and therefore, denied respondent's motion to dismiss.

[9] The petition was mailed via certified mail on Jan. 7, 1985, and was, therefore, timely filed within the meaning of sec. 7502.

[10] Respondent contends that he was proceeding under the mistaken assumption that the business records were "matters occurring before the grand jury" when he obtained the existing rule 6(e) orders.

tion. *In re Grand Jury Investigation,* 630 F.2d 996, 1000 (3d Cir. 1980), cert. denied 449 U.S. 1081 (1981). Documents subpoenaed and examined by a grand jury and transcripts of proceedings before a grand jury are protected under rule 6(e) if they are "matters occurring before the grand jury." Grand jury materials are those that directly or indirectly reveal what transpired in the grand jury. *In re Grand Jury Matter (Catania),* 682 F.2d 61, 63 (3d Cir. 1982); *United States v. DiBona,* 601 F. Supp. 1162, 1164 (E.D. Pa. 1984). Rule 6(e), however, does not shield for all time revelation of information that was previously presented to a grand jury. *United States ex rel. Woodard v. Tynan,* 757 F.2d 1085, 1087 (10th Cir. 1985).[11] Thus,

> when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. [*United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir. 1960).]

Accord *In re Grand Jury Investigation,* 630 F.2d at 1000.

At issue in this case are more than 70 boxes of documents including transcripts of grand jury proceedings and business records subpoenaed by the grand juries. Both parties admit that they do not know precisely what the boxes contain. Respondent nonetheless argues that the boxes contain business records of the Hajecates which were created for purposes independent of the grand jury investigations and do not reveal anything about the grand jury proceedings. Consequently, respondent contends that secrecy is not necessary. The Hajecates argue that because the documents in the boxes were subpoenaed and examined by the grand juries, they will necessarily reveal the scope, nature, and purpose of the grand juries' investigations and are entitled to the protection of rule 6(e).

We cannot accept either party's reasoning. The Hajecates' position assumes that any document subpoenaed or examined by a grand jury is entitled to protection under rule 6(e) because it will necessarily reveal what occurred before the

---

[11]Following a rehearing en banc, the 10th Circuit issued another opinion which neither "disavow[ed] nor affirm[ed]" the prior panel opinion. 776 F.2d 250 (10th Cir. 1985).

grand jury. When testimony or records examined by a grand jury are sought for purposes other than to learn what took place before the grand jury, however, grand jury secrecy is not compromised and rule 6(e) does not apply. *United States ex rel. Woodard v. Tynan,* 757 F.2d 1085, 1087, 1088 (10th Cir. 1985); *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir. 1960).

Respondent's position is flawed because it assumes that documents created for purposes independent of a grand jury investigation can never reveal what took place before the grand jury. Because such documents are created for purposes other than a grand jury investigation, and may be useful for purposes unrelated to discovering what occurred before the grand jury, courts have found such documents to be other than "matters occurring before the grand jury." See *In re Grand Jury Matter (Catania),* 682 F.2d at 64; *In re Grand Jury Investigation,* 630 F.2d at 1000; *United States v. DiBona,* 601 F. Supp. at 1164-1165. That does not mean, however, that documents can never reveal what went on before a grand jury. Most importantly, respondent has ignored the fact that the boxes in his possession also contain transcripts of grand jury proceedings and other matters that are likely to reveal the "essence" of what took place before the grand jury. See *In re Grand Jury Investigation,* 630 F.2d at 1000. Because we do not know what the boxes in respondent's possession contain, we cannot determine whether any of the records fall outside of the protection of rule 6(e). Secrecy is essential to the proper functioning of a grand jury. The Supreme Court has decided that issue firmly and unequivocally. Absent a clear indication that documents submitted to a grand jury are not entitled to protection, we will not approve a breach of this secrecy. See *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 425 (1983); *Illinois v. Abbott & Associates,* 460 U.S. 557, 572-573 (1983). We, therefore, assume that everything in the boxes is a "matter occurring before the grand jury" which may be disclosed only pursuant to a valid rule 6(e) order.

Respondent has insisted on relying on his position that the existing rule 6(e) orders remain valid[12] and has neither sought a new rule 6(e) order nor offered us the opportunity to inspect the records in camera. We must, therefore, determine whether the existing rule 6(e) orders permit respondent's prospective use of the grand jury materials in preparing these cases for trial or whether such use constitutes a new use of disclosure. This is an issue of first impression for this Court.

Subsequent to the issuance of the rule 6(e) orders in these cases, the Supreme Court decided two cases interpreting the requirements of rule 6(e). In *United States v. Baggot,* 463 U.S. 476 (1983), the Court held that a civil tax audit is not "preliminar[y] to or in connection with a judicial proceeding" within the meaning of rule 6(e)(3)(C)(i). Consequently, disclosure is not permitted under rule 6(e) for purposes of a civil tax audit, even if the results of that audit lead to litigation because the purpose of the audit is to determine a tax liability administratively and not to prepare for litigation. In *United States v. Sells Engineering, Inc.,* 463 U.S. at 418, the Court held that rule 6(e) was not intended to grant free access to grand jury materials to attorneys other than those involved in the criminal investigation to which the grand jury materials pertained. Thus, attorneys in the Civil Division of the Justice Department could not obtain disclosure of grand jury materials without first obtaining a court order under rule 6(e)(3)(C)(i), which would be granted only upon a showing of particularized need for the information.

The rule 6(e) orders at issue in these cases do not satisfy the "preliminar[y] to or in connection with a judicial proceeding" standard enunciated in *Baggot* or the "particularized need" standard of *Sells,* and respondent so concedes. In *Kluger v. Commissioner,* 83 T.C. 309, 335 (1984) (*Kluger*), however, we held that the decisions of the Supreme Court in *Baggot* and *Sells* would not be applied retroactively to invalidate final rule 6(e) orders under collateral attack in this Court. Consequently, notices of deficiency, the basis of

---

[12]At a hearing held at Houston, Texas, on May 4, 1987, we suggested to respondent's counsel that simply requesting a new Rule 6(e) order from the District Court could eliminate this controversy and the need for this opinion. Respondent's counsel, however, stated that she would not request a new order because to do so would undermine respondent's position that the existing orders are valid.

which was the grand jury information disclosed as a result of pre-*Baggot* and *Sells* rule 6(e) orders, remain valid.

Petitioners concede that the notices of deficiency issued in these cases, based on information obtained from the grand jury materials, are valid under *Kluger*.[13] They argue, however, that respondent's proposed use of the materials at trial constitutes a new and separate use requiring a new disclosure order. To obtain a new rule 6(e) order, respondent would have to demonstrate to the District Court that he satisfied the requirements of *Baggot* and *Sells*. Respondent contends that his proposed use of the grand jury materials constitutes a continuing use or disclosure authorized by the existing rule 6(e) orders. We agree with petitioners.

In *Sells*, the Supreme Court held that disclosure of grand jury materials to a Government attorney other than a prosecutor involved in the criminal proceeding constitutes a new disclosure for which the attorney must obtain a separate rule 6(e) order. 463 U.S. at 418. The Court cited three dangers that might arise from the disclosure of grand jury materials to Government attorneys for use in civil proceedings. First, disclosure increases "the number of persons to whom the information is available (thereby increasing the risk of inadvertent or illegal release to others)" and may render witnesses less willing to testify before a grand jury. Second, disclosure increases the possibility that Government attorneys conducting the grand jury investigation "might be tempted to use the grand jury's powerful investigative tool to root out additional evidence useful in the civil suit." Finally, use of grand jury materials by Government attorneys in civil cases may enable them to circumvent the usual methods of discovery. *Sells*, 463 U.S. at 432-433. To mute these dangers, the Court prohibited disclosures to attorneys other than the prosecutors pursuing the criminal case. *Sells*, 463 U.S. at 440-442.

More recently, in *United States v. John Doe, Inc. I*, 481 U.S. ____ (1987) (*John Doe*), the Supreme Court held that a

---

[13]Respondent issued his notice of deficiency in docket No. 626-85 on Oct. 9, 1984, after the Supreme Court's decisions in *Baggot* and *Sells*. We do not know the source of the information on which the notice of deficiency was based. In 1984, however, respondent no longer had custody of the boxes of grand jury materials and did not know their whereabouts. Moreover, petitioners have not argued that the deficiency notice is invalid because it was based on information obtained through the pre-*Baggot*-and-*Sells* rule 6(e) orders. Under *Kluger*, the notice of deficiency is valid.

Government attorney who conducted the criminal prosecution of a case could review grand jury materials for use in the civil phase of the same dispute without obtaining a rule 6(e) order because his review was not a new disclosure. The Court specifically discussed what constitutes a new disclosure. The Supreme Court noted that although the word "disclose" is not defined in rule 6(e), common dictionary definitions include to "open up," "expose to view," and "make known or public something previously held secret." *John Doe*, 481 U.S. at ___ n. 4. In addition, to constitute a disclosure, someone other than a person who already has access to the information must receive it. See *John Doe*, 481 U.S. at ___ ; *United States v. Archer-Daniels-Midland Co.*, 785 F.2d 206, 212 (8th Cir. 1986), cert. denied 481 U.S. ___ (1987).

The Second Circuit recently considered the precise issue now before us and concluded that (1) pre-*Baggot*-and-*Sells* rule 6(e) orders should not be given prospective effect, and (2) each subsequent use of grand jury materials constitutes a new disclosure. *In re Grand Jury Proceedings (Henry Kluger, Deceased)*, 827 F.2d 868 (2d Cir. 1987) (*Estate of Kluger*).[14] In *Estate of Kluger*, decedent's estate moved to have rule 6(e) orders issued prior to and not in compliance with *Baggot* and *Sells* vacated on the ground that the decisions in *Baggot* and *Sells* should be applied retroactively. The District Court concluded, and the Second Circuit agreed, that the better approach was not to apply *Baggot* and *Sells* retroactively to invalidate previous disclosures, but rather to hold that the original orders would no longer have prospective effect. Thus, although the determinations of civil tax liability which respondent had based on materials obtained from the grand jury remained valid, the Government was denied further access to the grand jury materials for use in pending civil tax litigation until it could establish a "particularized need" for the materials.

The Second Circuit, quoting *United States v. Sells Engineering, Inc.*, 463 U.S. at 422-423 n. 6, reasoned,

Each day this order remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the continued access of

---

[14]Decedent's widow, Debra Kluger, was the petitioner in *Kluger v. Commissioner*, 83 T.C. 309 (1984).

those to whom the materials have already been disclosed. We cannot restore the secrecy that has been lost but we can grant partial relief by preventing further disclosure. [*Estate of Kluger,* 827 F.2d at 873.]

The court noted that because the grand jury had terminated, the danger of possible inadvertent disclosure was lessened. See *John Doe,* 481 U.S. at ____ ; *In re Grand Jury Proceedings GJ-76-4 and GJ-75-3,* 800 F.2d 1293, 1300-1301 (4th Cir. 1986). There nonetheless remained significant secrecy concerns because the existing rule 6(e) orders did not limit the number of people who would have access to the grand jury materials and because the materials were to be used in an adversarial proceeding. See *John Doe,* 481 U.S. at ____ ; *Sells,* 463 U.S. at 432.

Respondent cites *United States v. (Under Seal),* 783 F.2d 450 (4th Cir. 1986), cert. denied sub nom. *Raven's Hollow, Ltd. v. United States,* 481 U.S. ____ (1987). In that case, grand jury materials were disclosed to respondent in 1979 pursuant to a rule 6(e) order. Relying on those materials, respondent issued a notice of deficiency. The taxpayers commenced a proceeding in this Court before the Supreme Court handed down its opinions in *Baggot* and *Sells.* In 1984, the taxpayers moved in District Court to vacate the rule 6(e) order and to restrain future use of the materials obtained and continually used pursuant to the order. The District Court denied the relief and the Fourth Circuit affirmed on the ground that *Baggot* and *Sells* were not to be applied retroactively. The Fourth Circuit held that because the existing order remained valid, continued use of the grand jury materials would not violate rule 6(e). Because of its holding, the court did not consider petitioners' argument that continued use of the materials constitutes a further disclosure.

The facts that the Fourth Circuit faced in *(Under Seal)* were considerably different from those before us.[15] In this case, agents and attorneys of respondent seek access to grand jury information 5 years after the materials were last examined. These agents and attorneys have never seen the grand jury materials. In *(Under Seal),* much of the grand jury material had already been disclosed to the public in the

---

[15]The facts in *In re Grand Jury Proceedings (Henry Kluger, Deceased),* 827 F.2d 868 (2d Cir. 1987), are not set out in sufficient detail for comparison with the case at bar.

course of a criminal trial. Furthermore, much of the civil use of the material had occurred prior to *Baggot* and *Sells* and had been uninterrupted. Under these circumstances, the Fourth Circuit concluded that continued use was permissible. Moreover, it is difficult to perceive how precluding additional disclosure in *(Under Seal)* would further the secrecy interests of rule 6(e).

The facts in the instant case present a strong case in favor of applying *Sells* prospectively to deny respondent renewed access to the grand jury materials. [16] Respondent originally obtained rule 6(e) orders from the District Court permitting him to examine more than 70 boxes containing business records of the Hajecates and transcripts of testimony before the grand juries investigating possible Department of Energy regulation violations. Based on the information contained in those boxes, respondent's agents issued statutory notices of deficiency in 1980, 1981, and 1982 to the Hajecates and related parties. After the deficiency notices were issued, respondent lost track of the boxes and did not discover until November 1986 that the FBI had taken custody of them. Five years after respondent last examined the information in the boxes, different agents and attorneys of respondent now seek to examine it again and use the information in the pending litigation. In the interim, however, the Supreme Court has changed the standards under which an individual may obtain disclosure of grand jury materials.

Reexamination of the materials by respondent, after a 5-year lapse in which he lost custody and no longer remembers the contents of the materials, is, in the ordinary sense of the words, a new use of disclosure. Moreover, if his counsel uses the grand jury materials at trial, it will increase "the number of persons to whom the information is available" and will "open up" and "make known or public something previously held secret." See *John Doe,* 481 U.S. at ____ n. 4; *Sells,* 463 U.S. at 432. Although we cannot restore any secrecy already lost as a result of the rule 6(e) orders that did not meet the requirements of *Baggot* and *Sells,* "we can grant partial relief by preventing further

[16]The *Baggot* requirements have, at this time, been satisfied and are not a bar to respondent's use of the grand jury materials in this litigation.

disclosure." *Sells,* 463 U.S. at 422-423 n. 6; *Estate of Kluger, supra.* Our refusal to grant prospective effect to the pre-*Baggot*-and-*Sells* rule 6(e) orders in this case is not inconsistent with *(Under Seal)* and reflects the Supreme Court's insistence upon more stringent protection of grand jury secrecy. [17] The fact that the materials are to be used in an adversarial proceeding heightens the need for secrecy and thus the need for a stronger showing of necessity to gain access to the information. See *John Doe,* 481 U.S. at ____ .

We, therefore, hold that respondent may not, in these cases, rely on the rule 6(e) orders issued prior to, and not satisfying the requirements of, *Sells* to authorize a new disclosure of grand jury materials by using these materials to prepare for trial. To obtain disclosure of the information, respondent must first obtain a new rule 6(e) order from the District Court, which can be granted only upon a showing of particularized need. [18]

To reflect the foregoing,

*An appropriate order will be entered.*

Reviewed by the Court.

STERRETT, CHABOT, WHITAKER, KÖRNER, HAMBLEN, CLAPP, JACOBS, WRIGHT, WELLS, and WHALEN, *JJ.,* agree with the majority opinion.

COHEN and RUWE, *JJ.,* did not participate in the consideration of this case.

[17]In this case, we do not reach the question of whether there is any conflict between our opinion in *Kluger v. Commissioner,* 83 T.C. 309 (1984), and *In re Grand Jury Proceedings (Kluger), supra.*

[18]The "particularized need" standard is a flexible one. *In re Grand Jury Proceedings GJ-76-4 and GJ-75-3,* 800 F.2d 1293, 1298-1299 (4th Cir. 1986). To obtain disclosure, the moving party must demonstrate that the need for disclosure outweighs the need for continued secrecy. *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 443 (1983); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979); *In re Grand Jury Proceedings GJ-76-4 and GJ-75-3, supra.*

Although we are in a better position to assess whether a particularized need for any of the materials exists (*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. at 226), we cannot issue a rule 6(e) order. Respondent must obtain a new order from the District Court that oversaw the grand juries whose materials respondent seeks to use in the civil proceeding before us. We will, of course, determine if the particularized need standard is satisfied should the District Court request our assistance. *In re Grand Jury Proceedings (Kluger),* 827 F.2d at 871; *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. at 231.

GERBER, *J.* dissenting: I respectfully dissent from the majority's holding for two reasons: (1) The majority's holding in this case effectively overrules our holding in *Kluger*[1] or renders it meaningless by incorrectly and retroactively applying the Supreme Court's holdings in *Baggot*[2] and *Sells*;[3] and (2) the majority's holding places redundant and unnecessary burdens on the court system and the parties.

(1) *Kluger.*—Confronted with the then recently published Supreme Court opinions in *Baggot* and *Sells*,[4] we held those opinions "are not to be applied retroactively to invalidate final rule 6(e) orders under collateral attack in this Court." *Kluger* at 335. Although our *Kluger* opinion addressed a specific set of facts, its clear intent was to permit "pre-*Baggot*-and-*Sells* rule 6(e)[5] orders" to retain their effectiveness and not to judge them by the newly published standards. Accordingly, if the Commissioner had received an order permitting use of grand jury materials for civil tax purposes, our holding would not force the parties to return to the District Court for a new order unless, of course, the original order was in some way defective (under the pre-*Baggot*-and-*Sells* standards). If, however, the Commissioner intended a use not stated or contemplated in the pre-*Baggot*-and-*Sells* order, a new order would be necessary and the Commissioner would have to meet the new standards.

In *Kluger,* as in this case, respondent obtained a pre-*Baggot*-and-*Sells* rule 6(e) order permitting the use of grand jury materials for civil tax purposes.[6] Petitioner in *Kluger* sought, in a pre-trial setting, to suppress the questioned materials or evidence and/or shift the burden of going

---

[1]*Kluger v. Commissioner,* 83 T.C. 309, 329-336 (1984).

[2]*United States v. Baggot,* 463 U.S. 476 (1983).

[3]*United States v. Sells Engineering, Inc.,* 463 U.S. 418 (1983).

[4]Those cases changed the standards for civil use of "grand jury materials" by requiring the showing of a more restrictive and specific "particularized need" for "grand jury materials" and redefining the definition of the phrase "preliminary to or in connection with a judicial proceeding." These opinions changed the standards in all but a few circuits and it is likely that many of the orders already issued by District Courts under rule 6(e) would not have met the new standards.

[5]Rule 6(e) of the Federal Rules of Criminal Procedure (rule 6(e)).

[6]In *Kluger,* respondent mailed the notice of deficiency prior to *Baggot* and *Sells* and the petition was filed subsequent to those opinions. In the cases under consideration, 10 of the notices of deficiency were mailed and petitions were filed, prior to the publication of the Supreme Court's opinions.

forward with the evidence to respondent. Our denial of the taxpayer's motion left respondent in a position to continue using the grand jury materials in the preparation of his case for settlement or trial. In this case, respondent does not seek to offer the questioned materials into evidence or to use, publish, or disclose them other than in the institutional context in which he has already used them and wishes to continue using them.[7] Our *Kluger* opinion addressed the use respondent seeks here, i.e., to publish respondent's determination to taxpayers in a notice of deficiency and to prepare for and pursue pretrial matters.[8] We are herein confronted with substantially the same situation as in *Kluger*.

The majority would have us believe that the circumstances in this case are different. The majority's distinctions are that: (1) A long period of time (about 5 years) elapsed during which time respondent neither used nor maintained control of the subject materials; and (2) the agents of respondent who originally used the materials are not the ones who would now use them. The majority sees these differences as constituting new or different disclosures which require a new order under rule 6(e) and, further, a showing of "particularized need" under the *Sells* case.

These are distinctions without a difference. The original orders under rule 6(e) permitted respondent to use grand jury materials[9] for civil tax purposes. The orders under consideration grant access "to transcripts of testimony taken and subpoenaed books and records" to "*agents* of the Internal Revenue Service and other *attorneys* and *investigative agents* of the United States Government * * * to determine * * * whether there is any civil tax liability arising therefrom." (Emphasis supplied.) The obvious purpose and intent of such orders, issued in the context of a

[7]We are not asked to consider here whether respondent may offer the material into evidence and whether the original rule 6(e) order was broad enough for that purpose. We are confronted with respolndent's request for continued administrative use of or access to the material which was intended by the original rule 6(e) order.

[8]Respondent did not come to us to seek the use of the questioned materials; rather, petitioners seek to deny respondent access to materials that have already been utiized by respondent. We should not treat respondent's refusal to determine whether in fact the materials are of the proscribed grand jury variety as an admission of weakness because respondent is seeking a pure legal response here and has attempted to force the issue without necessarily conceding his rights, which may include the right to use the material under the original order.

[9]As the majority has alluded, the 70 boxes may not contain any grand jury material within the meaning of rule 6(e).

pre-*Baggot*-and-*Sells* environment, was to permit determination, assessment, and collection of the civil tax liability, if any. To interpret it otherwise, would render such orders meaningless and wholly ineffective.[10] Within the context that the instant order was issued, respondent was treated as an institutional entity. Further, it is not unusual for respondent to be involved, for criminal purposes, with other executive enforcement entities, such as the FBI. Such materials are normally shared with the cooperating agencies. To require respondent to maintain absolute control over the material or impose a time limit on its use by respondent or others is unrealistic. Furthermore, a lapse of time within which the materials are *not used* should not make any difference.

No court has held that *Baggot* and *Sells* should be retroactively applied. Two circuit courts have addressed the question of whether *Baggot* and *Sells* should be applied prospectively to rule 6(e) orders outstanding at the time of the Supreme Court's opinions. *United States v. (Under Seal)*, 783 F.2d 450 (4th Cir. 1986), cert. denied sub nom. *Raven's Hollow, Ltd. v. United States*, 481 U.S. ____ (1987); *In re Grand Jury Proceedings (Henry Kluger, Deceased)*, 827 F.2d 868 (2d Cir. 1987). Essentially, the Fourth Circuit holds that pre-*Baggot*-and-*Sells* rule 6(e) orders may have prospective effect and permit "the continued use of grand jury material." The Second Circuit holds otherwise. The majority in this case attempts to factually distinguish the Fourth Circuit's opinion and takes solace in the Second Circuit's opinion. As discussed above, the majority has not adequately distinguished the facts in this case from *Kluger.* Moreover, the majority has not distinguished the facts or legal rationale of the Fourth Circuit's opinion where the grand jury materials were used more than 4 years at the time the taxpayer sought to end respondent's use.

---

[10]The pre-*Baggot*-and-*Sells* environment did not generally require a showing of "particularized need" which would have named a specific agent of respondent or required respondent to maintain continuous control and/or possession to comply with the order. Moreover, it is reasonable to expect that there would be interruptions in use should the materials be needed for criminal purposes or respondent's agents be promoted, fired, deceased, etc. Does the majority contend that we will send respondent back to the District Courts each time one of respondent's civil agents is changed?

The majority's rationale[11] results in a retroactive application of *Baggot* and *Sells*. The majority has used post-*Sells* standards to judge a pre-*Sells* order. By making each subsequent use constitute a new disclosure,[12] the majority has effectively overruled our holding in *Kluger* or rendered it meaningless. The majority's holding would only permit respondent to determine the amount of a taxpayer's tax liability without the ability to assess and collect the amount of tax determined.

(2) *Majority's approach is redundant and unnecessary.*— Prior to *Baggot* and *Sells,* a District Court judge properly acted upon respondent's application for an order under rule 6(e) to permit use of grand jury material for civil tax purposes. We have held the orders pre-dating the new standard will not be judged retroactively. The rule 6(e) order issued in this case is not, on its face, defective, and no showing has been made that the order was in any way deficient in its intent to permit respondent to determine the civil tax liabilities. Now we are asked to determine whether that same order would permit respondent to look at the same materials to prepare for settlement or trial, at a time when trial is far from a certainty. [13] Although the majority's rationale is not without merit, it is impractical and unnecessary. The majority is forcing respondent to go back to the same District Court[14] to review the 70 boxes of material to determine if any of it is "grand jury material" and, if so, whether the *Sells* standard is met so as to permit the issuance of a new order.[15] Following this seemingly

[11]I refer here to the majority's requirements that respondent's agent remain the same as the one who existed at the time of the rule 6(e) order and that he must maintain absolute control of the material.

[12]For this reason, I respectfully disagree with the Second Circuit in *In re Grand Jury Proceedings (Henry Kluger, Deceased),* 827 F.2d 868 (2d Cir. 1987). By refusing to apply the order prospectively to a "new disclosure," in the context of a tax controversy has the same effect as invalidating the prior order and/or retroactively applying the standard.

[13]More than 90 percent of the cases pending in this Court are resolved without the need for a trial.

[14]With the passage of time, it is less likely that the same District Court judge who issued the original order will be available or still sufficiently familiar with the subject matter to avoid the time necessary to understand the principles involved.

[15]Nothing the majority does here would preclude a District Court judge, especially the one who issued the original order, from deciding that the original order is sufficient. Our opinion is not binding on the District Court in those circumstances because we have no authority to issue rule 6(e) orders. We have determined only that we have the jurisdiction to consider whether such an order should result in the suppression of evidence or a change in the burden of going forward with evidence in this Court. Here, in an interlocutory setting, the majority

unnecessary step, the case will still be before this Court and will be settled or go to trial. If it goes to trial, we will likely have to review or consider the same 70 boxes of materials that a District Court judge will have already reviewed to determine whether a new order was necessary.[16]

With the extraordinary burden presently upon all courts in this country, I find it curious that the majority would force this matter into another forum based upon a motion in limine on a technical point of law which is generally not appealable because it is interlocutory. We could have, for example, insisted that the parties offer the material for in camera inspection to determine whether any of it was, in fact, "grand jury material." If none of the material is "grand jury material" or respondent is satisfied with the material he receives because it is not "grand jury material," the District Court would not have to deal with this matter (of course I do not feel that the majority's holding is correct, which would also obviate the need for review, ab initio). We should not unnecessarily put this burden on another forum which is not charged with the responsibility of resolving the parties' ultimate controversy.

NIMS, PARKER, SWIFT, and PARR, *JJ.*, agree with this dissent.

---

presumptuously sends respondent back to the District Court by deciding that the District Court's order is inadequate under a retroactively applied *Sells'* standard.

[16]In the *Kluger* case, we also rejected the taxpayer's motion to suppres the evidence, notwithstanding the fact the rule 6(e) order did not meet the standards in *Baggot* and *Sells*. *Kluger, supra* at 336-341.