NATHAN DIRECTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; NATHAN DIRECTOR AND ANNE DIRECTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Director v. Commissioner
Docket Nos. 15877-84; 15878-84.
United States Tax Court
T.C. Memo 1988-256; 1988 Tax Ct. Memo LEXIS 285; 55 T.C.M. (CCH) 1059; T.C.M. (RIA) 88256; June 13, 1988
*285 In 1979, pursuant to subpoena, P appeared as a witness before a New York State grand jury investigating the business practices of a hospital, an institution for which P had provided plumbing an heating services. P's books and records and other financial materials had been subpoenaed previously by the grand jury. Before the grand jury was discharged, the New York State Special Prosecutor's office sent a letter to the Criminal Intelligence Division, Internal Revenue Service, informing respondent that P had underreported his income for taxable years 1973, 1975 investigation of P's income tax liabilities for taxable years 1976 and 1977 and obtained information pursuant to subpoenas, court enforced summons proceedings and third-Party contacts. The results of this investigation were subsequently forwarded to the Examination Division. Separate notices of deficiency were issued on March 6, 1984, respecting P's 1976 and 1977 taxable years. Upon P's motion to suppress and for summary judgment, Held: Regardless of whether the letter disclosed "evidence or other matter attending a grand jury proceeding," respondent did not obtain or use privileged grand jury materials in determining petitioner's *286 civil tax liabilities. Held further: investigation did not violate either rule 6 (e), Red. R. Crim. P., or the Fourth or Fifth Amendments. Consequently, respondent's actions, in forwarding the results of his investigation to the Examination Division for preparation of deficiency notices, did not give rise to an intrasovereign violation requiring application of the exclusionary rule. Held further: Because suppression of evidence is not warranted in this case, respondent will not be required to go forward with separate or independent evidence at trial. Robert Katz and Edwin A. Bernstein, for the petitioners. Lewis R. Mandel and Rose E. Gole, for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: These consolidated cases are before the Court on petitioners' motions to suppress evidence and for summary judgment, filed pursuant to Rule 121. [1] Respondent has submitted written notices of objection to these motions. By separate notices of deficiency dated *287 March 6, 1984, respondent determined the following deficiencies and additions to tax in petitioners' Federal income tax: [2]
Additions to Tax
Year Ending
Deficiency
Sec. 6653(b)
December 31, 1976
$ 234,864.70
$ 117,432.35
December 31, 1977
$ 254,495.30
$ 127,247.65 The principal issues for our decision are (1) whether a letter sent by the New York State Special Prosecutor's office to respondent contained information disclosing "evidence or other matters attending a grand jury proceeding" in violation of New York law mandating secrecy of grand jury proceedings; and (2) assuming such information was improperly disclosed, whether the evidence derived by respondent pursuant to his investigation after receipt of this letter should *288 be suppressed. For purposes of our ruling, the parties have submitted numerous affidavits and legal memoranda in support of their respective positions. In the late 1970's, Charles J. Hynes, Special Deputy Attorney General of the State of New York convened and impaneled New York State Grand Juries in New York City and Long Island to investigate the alleged commission of indictable offenses with respect to health related facilities in the state of new York. One of these grand juries, designated as the September 1978 Grand Jury Number 3 (the grand jury) commenced an investigation of Brunswick Hospital Center, Inc., Amityville, New York (the Hospital). [3] *289 Terrence P. Buckley (Mr. Buckley), Special Assistant Attorney General, was assigned to conduct the Hospital investigation. Petitioner Nathan Director, the sole shareholder of Direct Plumbing Corp., doing business as Nat's Plumbing and Heating, had provided services to the Hospital over an extended period of time. During the course of the grand jury proceeding, various subpoenas duces tecum were issued to petitioner and his accountants for the production of the records and financial ledgers of both *290 Direct Plumbing and Nat's Plumbing. On November 9, 1978, Direct Plumbing's books and records were delivered to the New York State Special Prosecutor's (Special Prosecutor's) office. [4] According to petitioner, the Hospital's books and records were also subpoenaed and subsequently delivered to the Special Prosecutor's office on January 5, 1979. However, there is no evidence in this record that the Hospital provided records under subpoena on that date or at any other time while the grand jury was convened. [5] *291 *292 On January 15, 1979, petitioner was subpoenaed to testify before the grand jury. Petitioner claims that when he appeared with counsel, Mr. Buckley informed him that unless he was prepared to testify he "[would be turned] over to the Internal Revenue Service for prosecution." [6] *293 Thereafter, petitioner's counsel engaged in lengthy applications and procedural matters on petitioner's behalf. After he was given the option of being jailed or fined for contempt, petitioner subsequently appeared and gave testimony before the grand jury. The grand jury concluded its investigation in June 1979 without returning indictments against either petitioner or the Hospital. On August 16, 1979, petitioner's books and records were returned to him. On March 16, 1979, a letter addressed to Mr. William DePugh, Chief of the Criminal Investigations Unit, was received by the Internal Revenue Service (IRS) Intelligence Division, Manhattan District. This letter, dated March 14, 1979, was written on the letterhead of the Special Prosecutor for Nursing Homes, Health and Social Services with a special designation, "Medicaid Fraud Control Unit." The name of Deputy Attorney General Charles J. Hynes was set forth in the upper-left hand corner. The letter was signed by John J. Farrell, Senior Special Auditor/Investigator. The test of this letter (hereinafter referred to as the letter) is set forth below: During the course of our examination of the financial books and records of Brunswick Hospital Center, 366 Broadway, Amityville, New York, certain discrepancies *294 were noted. In particular it was observed that repairs and maintenance costs were abnormally high in comparison to other hospital complexes. Further investigation revealed that a primary cause of these high costs was the result of billings from Direct Plumbing Corp., A/K/A Nats Plumbing and Heating, 8 Laurel Avenue, Hicksville, New York. An examination of the cancelled checks issued by Brunswick Hospital to Nats/Direct disclosed that numerous checks were drawn each month in satisfaction of relatively few invoices. All checks drawn to Nats for the period January 1, 1971 through May 31, 1975 were cashed. It should be noted that this amount is in excess of $ 1,000,000. Certified copies of New York State Franchise Tax and Income Tax returns were obtained for the calendar years 1973, 1975 and 1976. A recalculation of these Hospital as gross receipts) has disclosed an understatement of net income in excess of $ 100,000 for each of the years mentioned. It is suggested that the Internal Revenue Service undertake an audit of the corporate tax returns of Direct Plumbing Corp. as well as the personal tax returns of Mr. Nathan Director, 10 Jerome Avenue, Hicksville, New York. Two weeks *295 later Special Agent Thomas J. Doddy (Special Agent Doddy) [7] initiated his investigation of the income tax liabilities of petitioner, Direct Plumbing Corp., and Nat's Plumbing and Heating for the taxable years 1976 and 1977. Subsequently, on September 28, 1979, Special Agent Doddy spoke with Frank Cecera (Mr. Cecera), New York State Special Prosecutor for Nursing Homes, Health and Social Services, who informed him that all records had been returned to third parties. Special Agent Doddy then obtained original records from Dr. Benjamin Stein (president and administrator of the Hospital) on November 6, 1980, which consisted of invoices and cancelled checks and invoices paid by the Hospital to petitioner. On or about that same date, Special Agent Doddy concluded his involvement with the investigation of petitioner, Direct Plumbing and Nat's Plumbing. On November 5, 1980, Special Agent Edward Krayewski (Special Agent Krayewski) was assigned to investigate the income tax liabilities of petitioner and those of his businesses. Special Agent *296 Krayewski spoke with Mr. Cecera on January 14, 1981, to inquire into obtaining a court order for the release of state grand jury records. The next day, Special Agent Krayewski spoke with Mr. Buckley who stated that he would be willing to obtain a court order if the District Counsel offered no objection. Special Agent Krayewski contacted Mr. Robert Droge (Mr. Droge) of the District Counsel's office on two occasions, January 15, 1981 and January 21, 1981. However, Special Agent Krayewski did not receive any further communications from Mr. Droge, nor did he make any additional inquiries. Special Agent Krayewski subsequently obtained all relevant exhibits through third party contacts and summons enforcement proceedings. Prior to March 16, 1979, neither petitioner nor his companies were or had been under investigation by the Internal Revenue Service, either civilly or criminally. No criminal tax proceedings were ever initiated against petitioner as a result of the Special Agents' investigation. At some point, the Special Agents terminated their investigation and submitted their findings to the Examination Division (formerly the Audit Division). [8] *297 On March 6, 1984, respondent issued statutory notices of deficiency to petitioner. [9] *298 In the notices of deficiency, respondent determined that petitioner had unreported gross receipts earned in the name of Nat's Plumbing and Heating, a small business corporation, from plumbing and heating services provided to the Hospital. Petitioner timely filed his respective petitions wherein he alleged that the deficiencies were founded upon information obtained through violations of the secret proceedings of a grand jury, as well as violations of his rights under the common law, the law of New York, the Federal Rules of Criminal Procedure and the Fourth and Fifth Amendments to the Constitution. On January 21, 1985, respondent's counsel in this case, Mr. Lewis Mandel (Mr. Mandel), provided Mr. Robert Katz and Mr. Edwin A. Bernstein, petitioner's counsel, with a copy of the letter and advised them that no state or Federal grand jury material was received or used by the IRS in this case. [10] Respondent's affirmation was again made to Mr. Michael N. Balsamo (Mr. Balsamo), petitioner's other counsel, on January 13, 1986. On that date, Mr. Mandel advised Mr. Balsamo that, at petitioner's request, Special Agents Doddy and Krayewski had reviewed the files in these cases and had reaffirmed that no Federal or state grand jury material had been received or used by them during the course of their respective investigations. Mr. Mandel acknowledged that Special Agent Krayewski had received subsequent telephone *299 calls from the Special Prosecutor's office concerning the status of the investigation, but emphasized that Special Agent Krayewski had declined to respond because of the prohibitions contained in section 6103 (relating to "Confidentiality and Disclosure of Returns and Return Information"). [11] Petitioner here does not complain that the state's action *300 in obtaining his books and records or other financial materials or their use in the grad jury proceeding violated his constitutional or statutory rights. Nor does petitioner contend that the grand jury investigation constituted an abuse of process or that it was conducted for purely civil purposes. [12] Rather, his complaint arises from an alleged disclosure of grand jury evidence or other matter attending a grand jury proceeding by a public servant in the employ of a state prosecutor and from the subsequent use of such information by the respondent. Petitioner contends that because the claims in this case arise under the Internal Revenue Code, Federal law, rather than New York law, is controlling and further states that rule 6 (e), Fed. R. Crim. P. , is the source of any privilege regarding the secrecy of grand jury materials. Alleging that the grand jury proceeding *301 received extensive press coverage, petitioner argues accordingly that when respondent received the letter from the "Hynes Commission," he was immediately put on notice that such letter contained information derived from the grand jury investigation. Petitioner further alleges that pursuant to telephone conversations between "Hynes Commission" representatives and respondent's agents, respondent solicited and accepted further disclosures of grand jury information. Citing Cohen v. Commissioner, a Memorandum Sur Order of this Court, unofficially reported at 42 T.C.M. 312, 50 P-H Memo T.C. par. 81,901 (1981), which he claims is factually identical to the case at bar, petitioner vigorously contends that the utilization of grand jury materials by the Internal Revenue Service for civil purposes without fist obtaining a valid rule 6 (e) order requires that this Court bar all information obtained from the state grand jury investigation and any evidence derived from the use of such information. [13] Finally, petitioner asserts that, if the letter and all evidence derived from that lead are to be suppressed in this proceeding, the notices of deficiency are arbitrary, requiring summary judgment *302 in his favor. [14] *303 Respondent argues that because the letter did not reveal occurrences before the grand jury, but merely provided information gleaned from the books and records of the Hospital, it is not within the ambit of either the New York statue prohibiting disclosures of "matters attending a grad jury proceeding" or rule 6 (e). Moreover, respondent argues that even if the letter is tainted, suppression is not warranted because such letter was a voluntary communication from the "Hynes Commission" and constituted an intersovereign disclosure fitting by analogy within United States v. Janis,428 U.S. 433 (1976), and applied by this Court in Guzzetta v. Commissioner,78 T.C. 173 (1982). It is well established that ordinarily this Court will not look behind a statutory notice of deficiency to examine the evidence used or the propriety of respondent's motives or conduct in determining the deficiency. Shriver v. Commissioner,85 T.C. 1, 3 (1985), and cases cited therein. Even where there has been substantial evidence of unconstitutional conduct by respondent in determining the deficiency or in so-called "naked assessment" *304 cases involving unreported illegal income, we have not found the statutory notices to be null and void. See Riland v. Commissioner,79 T.C. 185, 207 (1982); Jackson v. Commissioner,73 T.C. 394, 401 (1979); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 328 (1974); Human Engineering Institute v. Commissioner,61 T.C. 61, 66 (1973); Suarez v. Commissioner,58 T.C. 792, 814 (1972), overruled in part Guzzetta v. Commissioner,78 T.C. 173 (1982). As is pertinent here, this Court previously held that even if notices of deficiency are based upon improperly disclosed grand jury material, the notices of deficiency are not invalid, but rather the taxpayer must move to shift the burden of going forward to respondent. Graham v. Commissioner,82 T.C. 299 (1984), affd. 770 F. 2d 381 (3d Cir. 1985); accord Kluger v. Commissioner,83 T.C. 309, 310 n. 1 (1984). [15] In view of our position concerning the validity of statutory notices, even if we were grant petitioner's motion to suppress, summary judgment would not be appropriate in this case. [16] *306 Rather, we must decide whether under the instant circumstances, suppression of evidence is an appropriate sanction for the violation of a taxpayer's *305 rights, as alleged here, and if so, whether respondent should be required to go forward with separate and independent evidence at trial. [17] *307 We conclude that the evidence underlying these notices of deficiency should not be suppressed. As set forth in greater detail in our discussion herein, there are several reasons for this conclusion. First, assuming without deciding that the letter contains information concerning "matters before the grand jury," the law of privilege does not extend to the materials which respondent used in determining the deficiencies in issue. Second, under the particular circumstances of this case, we do not find that respondent, as recipient of an alleged disclosure of secret grand jury information, violated any Federal rule, statute, or any of petitioner's constitutional rights.
I. Rule 6(e) and *308 the Law of Privilege
We begin by addressing petitioner's argument that because the letter contained information disclosing matters before a state grand jury, under federal-state principles of comity respondent was therefore required to seek a rule 6(e) order before initiating a civil tax proceeding. In support of his argument that state grand jury materials deserve protection under rule 6(e) petitioner has cited cases dealing with the Federal common law of privileges. [18] *309 As prescribed by section 7453, [19] evidentiary matters in this Court are governed by Federal Rules of Evidence which in respect of privileges provide as follows:
Rule 501. General Rule. Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, *310 in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law. In interpreting rule 501, other Federal courts generally have *311 applied the Federal common law of privilege in Federal question cases. [20] *312 The Second Circuit follows this general rule. [21]Kaufman v. Edelstein,539 F.2d 811 (2d Cir. 1976)(state law does not apply in civil antitrust action); In re Albert Lindley Lee Memorial Hospital,209 F.2d 122 (2d Cir. 1953), cert. denied sub nom. Cincotta v. United States,347 U.S. 960 (1954) (admissibility of evidence in income tax investigative proceeding is governed by Federal, not state law). Although not specifically set out as a privilege under New York law, the State of New York does preserve the secrecy of its grand jury proceedings by statute. *313 As pertinent here, N.Y. Crim. Proc. Law sec. 190.25 (McKinney 1982), in effect during 1979, provides: 4. Grand jury proceedings are secret and no grand juror or other persons specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence or other decision, result, or other matter attending a grand jury proceeding. For the purposes of assisting the grand jury in conducting its investigation, evidence obtained by a grand jury may be independently examined by the district attorney, members of his staff, police officers specifically assigned to the investigation, and other such persons as the court may specifically authorize. Such evidence may not be disclosed to other persons without a court order. * * * A corresponding statute, N.Y. Penal Law sec. 215.70 (McKinney 1977), outlines the parameters of unlawful grand jury disclosure: [22] *315 *316 A person is guilty of unlawful grand jury disclosure when, being a grand juror, a public prosecutor, a grand jury stenographer, a grand jury interpreter, a police officer or a peace *314 officer guarding a witness in a grand jury proceeding, or a clerk, attendant, warden or other public servants having official duties in or about a grand jury proceeding, or a public officer or public employee, he intentionally discloses to another the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court. Nothing contained herein shall prohibit a witness from disclosing his own testimony. In New York, grand jury proceedings are shrouded in secrecy in order to protect the reputations of those investigated by or appearing before the grand jury from unfounded accusations, to ensure the independence of the grand jury's deliberative process, to prevent the flight of the accused and to encourage the free disclosure of information by those summoned before it. Matter of District Attorney of Suffolk County,58 N.Y.2d 436, 461 N.Y.S. 2d 773, 448 N.E.2d 440 (1983), citing People v. Di Napoli,27 N.Y.2d 229, 316 N.Y.S.2d 622, 265 N.E.2d 449 (1970); Goldberg v. Extraordinary Special Grand Juries, Onondaga County,69 A.D.2d 1, 418 N.Y.S.2d 695 (1979). The rule of secrecy applies equally to either one who *317 gives evidence or to one concerning whom evidence is given. Matter of District Attorney of Suffolk County, supra.Although it is not absolute, grand jury secrecy "is zealously guarded because the confidentiality of its proceedings must be insured if it is to continue to be effective." Matter of Carey [Fisher],68 A.D.2d 220, 416 N.Y.S.2d 904 (1979); accord People v. McDoo,45 Misc.2d 664, 257 N.Y.S.2d 763 (1965), affd. without opinion 51 Misc.2d 263, 272 N.Y.S. 2d 412 (1966), cert. denied 386 U.S. 1031 (1967). Under Federal law, Federal grand juries are clothed with secrecy for precisely the same reasons. See, e.g., United States v. Sells Engineering, Inc.,463 U.S. 418, 423-424 (1983); Douglas Oil Co. v. Petrol Stops Northwest,441 U.S. 211, 218-219 (1979); Pittsburgh Plate Glass Co. v. United States,360 U.S. 395, 400, 411 (1959); United States v. Proctor Gamble Co.,356 U.S. 677, 681-682 (1958); In re Grand Jury Investigation of Cuisinarts, Inc.,665 F.2d 24, 32-33 (2d Cir. 1981), cert. denied 460 U.S. 1068 (1983). Rule 6(e) of the Federal Rules of Criminal Procedure codifies the common law tradition of secrecy for federal grand jury proceedings.[23] *318 In view of these similarities, we believe that the Federal common law, as interpreted in light of "reason and experience," accords *319 at least a qualified privilege to the records of a state grand jury proceeding. [24] *320 *321 Therefore, we conclude that it is appropriate to apply rule 6(e) principles to assist us in our analysis here. The purpose of rule 6(e) is to protect the "essence of what takes place in the grand jury room." In re Grand Jury Investigation (SCI)630 F.2d 996, 1000 (3d Cir. 1980), cert. denied 449 U.S. 1081 (1981). Rule 6(e), in pertinent part here, states that there shall be no disclosure of "matters occurring before the grand jury" unless otherwise provided by the rules. Rule 6(e)(2). If the "matters" in question are not "matters occurring before the grand jury" there is no privilege at all, as rule 6(e)(2) provides that "No obligation of secrecy may be imposed on any person except in accordance with this rule," and thus, disclosures may be made without court order. What constitutes matters occurring before the grand jury, therefore, is key. In construing rule 6(e)(2), courts have not been startlingly clear. For example, it has been stated that its scope extends to "anything which may reveal what occurred before the grand jury," In re Grand Jury Matter (Catania),682 F.2d 61, 63 (3d Cir. 1982), *322 or "information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberation or questions of the jurors, and the like." Fund for Constitutional Gov't v. National Archives & Records Serv.,656 F.2d 856, 969 (D.C. Cir. 1981), quoting SEC v. Dresser Industries, Inc.,628 F.2d 1368, 1382 (D.C. Cir.) (en banc), cert. denied 499 U.S. 993 (1980). It has been held that only when some secret aspect of the grand jury investigation will be revealed is the rule applicable. In re Special February, 1975, Grand Jury,662 F.2d 1232 (7th Cir. 1981). See also Anaya v. United States,815 F.2d 1373, 1379 (10th Cir. 1987); United States ex. rel. Woodard v. Tynan,757 F.2d 1085, rehearing en banc 776 F.2d 250 (10th Cir. 1985), wherein the court of appeals "neither disavow[ed] nor affirm[ed] the prior panel opinion." If obtained from a source independent of the grand jury proceeding, such as a prior investigation, there is no privilege. Sisk v. Commissioner,791 F.2d 58 (6th Cir. 1986), affg. an unpublished opinion of this Court; In re Grand Jury Matter (Catania),682 F.2d at 64 quoting In re Grand Jury Investigation (Lance),610 F.2d 202, 217 (5th Cir. 1980); *323 United States v. DiBona,601 F.Sup. 1162, 1164 (E.D. Pa. 1984). Nor does a statement of opinion as to an individual's potential criminal liability violate the secrecy rule, unless the statement reveals the grand jury information on which it is based. In re Grand Jury Investigation (Lance), supra.
Documents subpoenaed and examined by a grand jury and transcripts of proceedings before a grand jury are protected under rule 6(e) if they are "matters occurring before a grand jury." In re Grand Jury Matter (Catania), supra, however, the court of appeals upheld disclosure of tapes, videos, documents and prosecution memoranda summarizing information because the materials were not "generated by" the grand jury. Where materials are "generated by" the grand jury, they may still be outside the confines of rule 6(e) if they disclose nothing more than what is contained in documents independently generated in the regular course of business and are merely different in form. See In re Grand Jury Matter (Garden Court Nursing Home, Inc.),697 F.2d 511, 516 (3d Cir. 1982) (Garth, J., concurring). However, if revelation of the document in the particular context reveals something material about the grand *324 jury's investigation,then disclosure of such document constitutes a "matter occurring before the grand jury." Anaya v. United States, supra at 1379; In re Grand Jury Matter (Garden Court Nursing Home, Inc.), supra (although not presented to grand jury, auditors' analyses were not a bare bones summary of nursing home's books and records because they contained the auditors' conclusions about where particular expenses were legitimate, and given the nature of the crimes for which plaintiff was indicted, a reasonable person would conclude that audits or their results were presented to the grand jury). Rule 6(e) does not shield for all time, however, the revelation of information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake -- for its intrinsic value in the furtherance of a lawful investigation -- rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury.
United States v. Interstate Dress Carriers, Inc.,280 F.2d 54 (2d Cir.1960); Anaya v. United States, supra at 1374; *325 United States ex. rel. Woodward v. Tynan, supra at 1088, and cases cited therein; United States v. Lartey,716 F.2d 955, 964 (2d Cir. 1983); see also United States v. Weinstein,511 F.2d 622, 627 n. 5 (2d Cir. 1975), cert. denied 422 U.S. 1042 (1974) (questionable whether rule 6(e) applies to documents marked as exhibits before a grand jury); In re SJC Manufacturing Corp.,479 F. Sup. 647, 651 (E.D.N.Y. 1979) (Internal Revenue Service is not foreclosed from examining necessary records to determine the tax liability of a taxpayer merely because those records are held by a grand jury). Thus, documents, such as business records, which are created independently of and have a legitimate use unrelated to the grand jury proceedings are unlikely to reveal what was before the grand jury. In the Matter of Grand Jury Proceedings (Miller Brewing Company),687 F.2d 1079, 1089-1090 (7th Cir. 1982); In re Grand Jury Investigation (SCI), supra;United States v. Stanford,589 F.2d 285 (7th Cir. 1978). See also SEC v. Dresser Industries, supra (documents created for an independent corporate purpose are not immune from disclosure). Although petitioner argues that the letter in question contains information *326 concerning "matters occurring before a grand jury" and should have been disclosed only pursuant to court order, we need not address whether the letter fits the rubric of either the state statute or rule 6(e) in order to resolve the issue before us. In reaching this conclusion, we do not dispute the fact that the letter in question served as the impetus for respondent's investigation. However, even assuming that the letter disclosed privileged information, it obviously did not contain sufficient information enabling the Criminal Intelligence Division to send it directly to the Examination Division for preparation of a notice of deficiency. Thus, the situation here is in contrast to those cases where comprehensive grand jury material, with or without a court order, simply has been turned over to respondent's agents for the purpose of determining a taxpayer's civil tax liabilities. See, e. g., United States v. Sells Engineering, Inc.,463 U.S. 418, 432-433 (1983); Cohen v. Commissioner, supra.
Congress has vested the Internal Revenue Service with powers to determine tax liabilities. See secs. 7601, 7602, 7604, 7609, 7623. Although concedely given a "tip" or "lead," respondent in *327 this case was compelled to begin a full scale investigation using some of those broad discovery tools, including subpoenas and court enforced summonses. Under such circumstances we cannot conclude that receipt of the letter allowed respondent to circumvent the normal discovery rules and procedures used in civil litigation, a concern admittedly prevalent in many cases construing the propriety of disclosure of grand jury materials. Moreover, the fact that respondent interviewed some of the witnesses that appeared before the grand jury does not bar respondent from using that information in furtherance of his investigation. Neither rule 6(e) nor New York law prohibits witnesses from disclosing the substance of their testimony once outside the grand jury room. See, e.g., In re Application of Eisenberg,654 F.2d 1107, 1113 n. 9 (5th Cir. 1981); Bast v. United States,542 F.2d 893, 896 (4th Cir. 1976); Melendez v. City of New York,109 A.D.2d 13, 489 N.Y.S.2d 741 (1985). We recognize that particularly since the decisions in United States v. Baggot,463 U.S. 476 (1983), and United States v. Sells Engineering, Inc., supra, there is a great concern where grand jury materials are disclosed *328 for civil purposes without the requisite showing of "particularized need" or where use is not "preliminar[y] to or in conjunction with a civil proceeding." In this case, however, despite petitioner's arguments to the contrary, there is no evidence that respondent used grand jury materials in determining petitioner's tax liabilities. In fact, respondent specifically denies using such materials. And, as the cases construing rule 6(e) indicate above, the materials that respondent did use, such as books and records (primarily belong to third parties) are not privileged even though they may have been examined by the grand jury. [25]
II. The Exclusionary Rule and Intersovereign vs. Intrasovereign Violations
We will now address petitioner's allegations that his rights were violated by respondent's use of the letter and that respondent's conduct gave rise to an intrasovereign violation. For purposes *329 of resolving this question, both parties have urged us to apply the principles of the exclusionary rule to the facts in the instant case. [26] *330 On the one hand, respondent urges us to consider the intersovereign nature of the alleged violation as first discussed in United States v. Janis, supra, while petitioner, relying on Cohen v. Commissioner, supra, argues that the disclosure of grand jury material by the special agents to a revenue agent for use in determining petitioner's civil tax liabilities constitutes an intrasovereign violation requiring application of the exclusionary rule. The exclusionary rule is a narrow judicial "remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal *331 constitutional right of the party aggrieved." United States v. Janis,428 U.S. at 446-447. [27] *332 It has also been applied where evidence is obtained in violation of Federal statutes or Federal rules of procedure. United States v. Blue,384 U.S. 251, 255 (1966) and cases cited therein; United States v. Genzer,582 F.2d 292, 307 (3d Cir. 1978). However, application of the rule has been restricted to those areas where its remedial objectives are most efficaciously served. United States v. Janis, supra, citing United States v. Calandra,414 U.S. 338, 348 (1974). See also Tirado v. Commissioner,689 F.2d 307 (2d Cir. 1982), affg. on other grounds 74 T.C. 14 (1980). In United States v. Janis, supra, the IRS made a wagering tax assessment based exclusively upon evidence obtained by the Los Angeles police pursuant to a search warrant which, after a hearing as to the adequacy of the supporting affidavit, was quashed by the judge who had issued the warrant. The taxpayer contended that the evidence obtained pursuant to the search warrant could not be used to support the assessment. After reviewing the history of the rule excluding illegally seized evidence, the Supreme Court held otherwise and stated that "the prime purpose of the rule, if not the sole one, is to deter future unlawful police conduct." 428 U.S. at 446. In balancing the deterrent effect on State police induced by suppressing the evidence in a Federal civil proceeding, with the societal cost of excluding relevant and reliable evidence from the trial, the Court concluded that the "judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent or another sovereign." 428 U.S. at 459-460. *333 The Court's basis for its decision stemmed from the fact that any interest of the state law enforcement officer in a Federal civil tax proceeding was too attenuated to justify an extension of the exclusionary rule to such civil proceeding. 428 U.S. at 458. It noted, however, that a different result may be warranted if Federal participation in the search could be established. 428 U.S. at 4556-456 n. 31. This Court has followed the rationale outlined in Janis in cases involving similar fact patterns. Guzzetta v. Commissioner,78 T.C. 173 (1982); Black Forge, Inc. v. Commissioner,78 T.C. 1004 (1982) (cases in which this court emphasized that no Federal officers were involved in the investigation, arrest, search or seizure). See also Tirado v. Commissioner, supra (although Federal narcotics agents were involved in the illegal search and seizure, court of appeals held that the tax deficiency proceedings were too remote from the "zone of primary interest" of the Federal agents and there was no evidence showing the Federal agents worked in close conjunction with the IRS). [28] *334 We have, on one occasion, applied the exclusionary rule to suppress evidence where there has been a violation of rule 6(e) and breach *335 of grand jury secrecy. Cohen v. Commissioner,42 T.C.M. 312, 50 P-H Memo par. 81,901 (1981). In Cohen, a case which petitioner contends governs the outcome here, the taxpayer was a shareholder in Flamingo Company which operated a gambling casino in Las Vegas, Nevada. The Audit Division and the Intelligence Division undertook a joint civil and criminal tax investigation of the company for the years 1966 to 1968, based upon information that "skimming" of unreported casino income was taking place. In early 1970, long after these investigations commenced, the Chief Counsel of the IRS wrote to the Justice Department suggesting that a grand jury be convened to investigate Flamingo Company and its shareholders. A grand jury was subsequently convened in Miami, Florida. Information regarding testimony before the grand jury was made available to agents of the Intelligence Division, who assisted Justice Department attorneys during and after the grand jury investigation by preparing questions and evaluating grand jury testimony and documents. However, these agents were never appointed or sworn in as agents of the grand jury. The special agents then supplied the grand jury information to an *336 agent of the Audit Division, who used it to compute the taxpayer's civil tax liabilities. Another grand jury was convened in October 1971 in Las Vegas. The agents of the Intelligence Division had an informal relationship with that grand jury similar to the one they had enjoyed with the Miami grand jury. The Las Vegas grand jury information received by them was also forwarded to the Audit (now Examination) Division. Through 1973 and into 1974, agents and employees of the IRS received and made extensive use of grand jury testimony in preparing the civil tax cases against the taxpayer, which included allegations that the taxpayer received unreported skimmed income from the casino business. These allegations were incorporated into a notice of deficiency issued June 21, 1974. No order under rule 6(e) was ever sought or obtained from the District Court in Miami. However, in September 1975, upon an ex parte motion filed by the United States Attorney, the Nevada District Court granted a limited order under rule 6(e) permitting the disclosure of testimony of certain witnesses before the Las Vegas grand jury to the IRS. This order was later expanded in October 1978 to cover all testimony *337 before the Las Vegas grand jury. The District Court was not made aware of the IRS's prior access to grand jury materials on either occasion. [29]
In late 1979, the taxpayer moved the Tax Court for suppression of the evidence obtained by the IRS in violation of rule 6(e) and to shift the burden of going forward to the Commissioner. This Court, after concluding that suppression was an appropriate remedy where there was a violation of a Federal statute, acknowledged that Janis had left undecided the application of the exclusionary rule to civil tax proceedings involving an intrasovereign violation of the taxpayer's rights. Relying upon the Supreme Court's failure to criticize a line of cases that had applied the exclusionary rule to intrasovereign violations and on dicta in post-Janis cases, [30] this Court found itself not precluded from *338 applying the exclusionary rule and evaluated the appropriateness of that remedy.
After conceding that there might have been authority which would have sanctioned the disclosures made to the IRS agents of the Intelligence Division who assisted the grand jury, although they were not agents of the grand jury, this Court emphasized that nothing in rule 6(e) before or after the 1977 amendments permitted further disclosure to other IRS personnel for the purpose of preparing a civil tax case against the taxpayer. This Court noted that exclusion provided more than "marginal incremental deterrence" because it was directed at the offending officials who specifically acquired the evidence to use *339 in that particular civil proceeding. In addition to deterring illegal use of grand jury material by assisting Federal personnel, suppression of such evidence, in the Court's view, protected the integrity of future grand jury proceedings from being undermined. We find the facts in Cohen to be distinguishable from those here. Accordingly, we see no merit in petitioner's argument that respondent violated rule 6(e) by going forward with an investigation upon receipt of the letter or when the criminal Intelligence Division referred the matter to the Examination Division. [31] *340 Petitioner's contention that the exclusionary rule must be applied to suppress evidence in this case is equally meritless. Unlike the situation in Cohen, respondent's agents were not involved with any aspect of the State grand jury investigation nor had any Federal grand jury been impaneled with respect to petitioner. Prior to receipt of the letter from the Special Prosecutor's office, the IRS had demonstrated no interest in investigating petitioner's tax liability. The letter, which was sent voluntarily by the Special Prosecutor's office, contained no specific mention of an ongoing grand jury proceeding or that petitioner had appeared as a witness before it. Despite petitioner's contention, it has not been conclusively established that the IRS *341 was aware (in March 1979) that a sitting grand jury was looking into the business affairs of the Hospital, or that petitioner was intimately involved in that proceeding. The record in this case demonstrates only that respondent, after receipt of the letter, proceeded with a legitimate, independent investigation of petitioner's income tax liabilities by interviewing witnesses and securing documents after court enforcement of IRS administrative summonses. There is no evidence that any prior agreement or arrangement existed between the IRS and the Special Prosecutor's office. Furthermore, other than petitioner's general allegations, there is no evidence that any other contacts occurred between these officials while the grand jury was convened or that privileged grand jury information was provided or solicited during telephone conversations in September 1979 or January 1981. As noted previously, respondent has attested that the deficiency notices were not computed using grand jury materials or founded upon evidence derived from a grand jury proceeding. We may accept such a statement by the Government that its files reveal no evidence of any illegal action. See United States v. Hauff,461 F.2d 1061 (7th Cir. 1972). *342 Because the documents and records used by respondent were neither in the custody of the grand jury nor were they within the ambit of grand jury materials, respondent was not required to obtain a court order to gain access to that information. To summarize, the record here, unlike that in Cohen, is void of any intentional or flagrant violations of grand jury secrecy by the officials who acquired the evidence to use in this civil proceeding. Thus, while we do not condone breaches of grand jury secrecy, if any violations of grand jury secrecy occurred in this case they were purely violations of state law at the hands of state personnel. In this light, we find that the dissemination of the fruits of the Criminal Intelligence Division's lawful investigation to the Examination Division did not constitute an intrasovereign violation. We note that it is common practice for the IRS Criminal Intelligence Division to forward its findings to the Examination Division for disposition where the particular matter lacks criminal potential or there is insufficient evidence to go forward with a criminal tax proceeding. See generally Internal Revenue Manual (Criminal Investigation) sections 9311.82 and *343 9311.83 (1984); Blackforge v. Commissioner, supra.
Accordingly, we conclude that respondent's actions here did not contravene any Federal statute or rule of procedure. Examination Division for disposition where the particular matter lacks criminal potential or there is insufficient evidence to go forward with a criminal tax proceeding. See generally Internal Revenue Manual (Criminal Investigation) sections 9311.82 and 9311.83 (1984); Blackforge v. Commissioner, supra.
Accordingly, we conclude that respondent's actions here did not contravene any Federal statute or rule of procedure. Respondent conducted a lawful investigation of petitioner's income tax liabilities and did not use privileged grand jury materials as the basis for the notices of deficiency. We further conclude that because the exclusionary rule is not applicable in this case, suppression of the evidence is not warranted. Therefore, there is no reason to require respondent to go forward with independent or separate evidence at trial. [32] *344 To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all Rule references refer to the Tax Court Rules of Practice an d Procedure an all section references refer to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. ↩
2. In docket No. 15877-85, corresponding to taxable year 1976, respondent determined deficiencies and additions to tax solely against Nathan Director. Nathan and Anne Director were married in 1977. For that year (docket No. 15878-84) respondent determined deficiencies in their joint income tax, but determined additions to tax under section 6653 (b) only against Nathan Director. For purposes of our ruling here, all references to petitioner will refer to Nathan Director. ↩
3. The Hospital is also before this Court in docket No. 25068-82 and 3356-85 corresponding to taxable years 1976, 1977, and 1978. In his notices of deficiency involving those consolidated cases, respondent disallowed the Hospital's deductions for repair and maintenance expenses, alleging that all or part of the payments were returned to the Hospital or Hospital officials by Nathan Director (Director) as "kickbacks." See Brunswick Hospital Center, Inc. v. Commissioner,T.C. Memo. 1987-253 (denial of Hospital's motion for summary judgment). Although the cases involving the Hospital have been set for trial on numerous occasions, they have been continued over the course of several years because at each calendar call Director has repeatedly claimed that he would assert his Fifth Amendment privilege if called as a witness. Director allegedly feared his testimony could lead to criminal prosecution because the statute of limitations had not yet run. However, the statute of limitations respecting criminal prosecution for tax evasion has now run, and generally, where there is no reasonable apprehension of criminal prosecution, the Fifth Amendment may not be claimed in civil tax cases. Harper v. Commissioner,54 T.C. 1121↩ (1970). 4. These records included: cash receipts and disbursements journals (1975 and 1976); purchase journals and general journals ledger (1975 and 1976); bank statements and cancelled checks (1975 and 1976); Forms 941, quarterly wage summaries and employer's earning records; accountants' workpapers and adjusting journal entries (1976) and miscellaneous invoices. Although petitioner's State and Federal income tax returns were also subpoenaed, it is not clear whether these were provided by petitioner or his accountant or obtained through other channels. ↩
5. While we generally decline to take judicial notice of specific findings of fact made by other courts, where such of Reis v. Commissioner,87 T.C. 1016, 1028-1029 (1986)(rule 201, Fed. R. Evid.), on our own motion we will take judicial notice here of the New York Appellate Division's opinion in Brunswick Hospital Centre, Inc. V. Hynes,76 A.D. 2d 436, 431 N.Y.S. 2d 547 (1980). We do so only for the limited purpose of discussing petitioner's claim that the Hospital's books and records were delivered to the grand jury under subpoena. In its decision reviewing orders of the county court, the New York appellate court noted that although the grand jury had issued subpoenas duces tecum returnable October 6, 1978 and march 30, 1979, requiring the Hospital to produce enumerated categories of this records, the parties instead engaged in a variety of "legal skirmishes." The Hospital apparently challenged the validity of the first subpoena and asserted that the records sought under the second subpoena were not available because of their being mishandled and misplaced by the Special Prosecutor while in the possession of his agents and employees during 1977 and 1978. The New York appellate court's portrayal of the facts indicates that the Hospital's books and records, as well as information concerning its suppliers, were voluntarily provided to the Special Prosecutor after the latter commenced an investigation of the Hospital's business affairs in November 1977. We conclude that the facts set forth in that opinion conflict with those presented by petitioner. Therefore, we make no specific finding of fact with respect to whether the Hospital's books and records were delivered to the Special Prosecutor's office on January 5, 1979. 6. According to Mr. John Sutter, who began representing petitioner in the spring of 1979, Mr. Buckley carried out his "threat." Mr. Sutter submitted an affidavit wherein he alleges that subsequent to the termination of the grand jury proceedings he spoke with Mr. Buckley on two separate occasion. Mr. Sutter states that during those meetings Mr. Buckley confirmed that his office turned over information derived from the grand jury proceedings to the Internal Revenue Service. 7. Special Agents Thomas J. Doddy and Edward Krayewski submitted affidavits in conjunction with respondent's notice of objection to petitioner's motions. ↩
8. Petitioner notes that no civil examination ever took place and that the figures set forth in the notice of deficiency were merely copied from the Special Agents' reports by the civil auditor. 9. Subsequently, in a notice of deficiency dated August 24, 1987, respondent determined a deficiency and an addition to tax under section 6653 (b) (1) in petitioners' 1978 Federal income tax in the amounts of $ 517,345.00 and $ 258,672.50, respectfully. Petitioner timely filed a petition asserting that the notice of deficiency was based upon grand jury information unlawfully obtained by respondent in violation of the Constitution and rule 6 (e), Federal Rules of Criminal Procedure↩. Respondent has moved to consolidate this latest case, docket No. 36167-87, with these two dockets now before us. We have deferred ruling on the motion to consolidate until we have made a determination with respect to petitioner's motions here. 10. Mr. Mandel also filed an affidavit in this proceeding wherein he asserts that the letter received by William DePugh is the only letter or document contained in the file which was received from the Special Prosecutor's office. Mr. Mandel further avers that he reviewed the administrative files in his custody and control, and attests that these files do not contain any information or documents obtained from any grad jury proceeding impaneled before any State or Federal court with respect to petitioner. ↩
11. Mr. Balsamo submitted an affidavit wherein he alleges that he had a conversation with Mr. Buckley wherein Mr. Buckley stated unequivocally that "he spoke with respondent's agents on at least two occasions subsequent to March 14, 1979, but that [Mr. Buckley] had no recollection as to the matters discussed during those phone conversations." ↩
12. Because the grand jury has extremely broad investigatory powers, manipulation of the grand jury to ferret out additional evidence useful in a civil suit is per se improper. United States v. Proctor and Gamble Co.,356 U.S. 677, 683-684 (1958). See also United States v. Sells Engineering, Inc.,463 U.S. 418, 432-433↩ (1983). 13. We would emphasize that Cohen v. Commissioner, a Memorandum Sur Order of this Court, unofficially reported at 42 T.C.M. 312, 50 P-H Memo par. 81,901 (1981), carries no precedential value. Our discussion of the Cohen case, as set forth in the text of this opinion, infra, is included for the limited purpose of addressing petitioner's arguments and to illustrate that petitioner's reliance on that case is misplaced as the instant case under consideration is factually distinguishable from Cohen.↩
14. Rule 121 (b) provides that a decision my be rendered upon a motion for summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Naftel v. Commissioner,85 T.C. 527, 529 (1985); Espinoza v. Commissioner,78 T.C. 412, 416 (2982). In considering a motion for summary judgment we must view the facts and inferences to be drawn therefrom in the light most favorable to the party opposing the motion. Jacklin v. Commissioner,79 T.C. 340, 341 (1982). Such party must, however, set forth facts showing that there is a genuine issue for trial. Rule 121 (d). 15. This approach in consistent with the Court's action in Cohen v. Commissioner, a Memorandum Sur Order of this Court, unofficially reported at 42 T.C.M. 312, 50 P-H Memo T.C. par. 81,901 (1981). In that case, discussed more fully in the text of this decision, infra, the Government did not secure rule 6(e) orders before the Internal Revenue Service obtained access to grand jury materials which were used to compute deficiency notices. In Cohen,↩ we denied the taxpayers' motions to dismiss and for summary judgment. Further, although we did grant the taxpayers' motion to suppress, we also denied their motion to place the burden of proof on respondent. 16. We also note that we have often concluded that summary judgment is inappropriate where the issue of fraud is involved, as is the situation here for both years in issue. See 6 Moore Federal Practice, par. 56.17, pp. 56-930 (2d ed. 1948); Espinoza v. Commissioner,78 T.C. 412 (1982); Home v. Commissioner,63 T.C. 18, 20 (1974) (summary judgment is inappropriate when issues of motive, intent and other subjective feelings and reactions are material).
17. Neither party has called our attention to any definitive court decisions involving factual circumstances similar to those involved in the present case, and with only one exception, our research has not revealed any. In Reichert v. Commissioner,214 F.2d 19 (7th Cir. 1953), affg. 19 T.C. 1027 (1954), the taxpayer filed a motion to suppress evidence alleging that the cases were based, founded upon and sprang directly from the illegal and unlawful disclosure and delivery by the prosecuting attorney of Vanderburgh County, Indiana, to the representatives of the Intelligence Unit of the United States Bureau of Internal Revenue of a transcript of the testimony of witnesses who had appeared before a county grand jury. The motion charged that everything learned by the government representatives concerning the alleged income tax liabilities of taxpayer was learned illegally and unlawfully in violation of the taxpayer's constitutional guarantees, specifically in violation of the Fifth and Fourteenth Amendments. The trial then proceeded in the Tax Court and petitioner made no objections to evidence on the grounds set up in the motions to suppress. After analyzing the pertinent Indiana statute, the court of appeals concluded that the provisions of that statute respecting grand jury secrecy were not for the benefit of the taxpayer, and further, since there had been no search or seizure of any information or property belonging to the taxpayer, his constitutional rights had not been violated. 214 F.2d at 22-24. We do not find Reichert↩ to be dispositive of the case at bar, however, and we will not rely on it for purposes of our determination here. 18. Unlike most exclusionary rules, the rules of privilege are not designed or intended to facilitate the fact finding process or to safeguard its integrity. "Their effect is clearly inhibitive; rather than facilitating the illumination of truth, they shut out the light." McCormick on Evidence, sec. 72, p. 171 (3d ed. 1984). For this reason, the Supreme Court has recognized that privileges must be narrowly construed. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for truth." United States v. Nixon,418 U.S. 683, 710 (1974). In any case, however, the moment privileged information is divulged, the point of having the privilege is largely lost. 2 Weinstein's Evidence, par. 501[02] at 501-21 (1986), citing Perrignon v. Bergen Brunswig Corp.,77 F.R.D. 455, 458 (N.D. Calif. 1978) (court concluded that it could not apply Federal law with regard to Federal claim and California law with regard to pendent claim because "Once confidentiality is broken, the basic purpose of the privilege is defeated"). See also Hearings before the Comm. on the Judiciary, United States Senate, 93d Cong., 2d Sess., on Federal Rules of Evidence 202↩ (1974)(statement of Richard H. Keatinge, "absurdity"). 19. SEC. 7453. RULES OF PRACTICE, PROCEDURE, AND EVIDENCE. Except in the case of proceedings conducted under section 7463, the proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe and in accordance with the rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia. See also Rule 143(a): Trials before the Court will be conducted in accordance with the rules of evidence applicable in trials without a jury in the United States District Court for the District of Columbia. * * * To the extent applicable to such trials, those rules include the rules of evidence in the Federal Rules of Civil Procedure and any rules of evidence generally applicable in the Federal courts * * * ↩
20. See, e.g., United States v. Schoenheinz,548 F.2d 1389 (9th Cir. 1977); Gannet v. First National State Bank of New Jersey,546 F.2d 1072 (3d Cir. 1976), cert. denied 431 U.S. 942 (1977); In re Grand Jury Impaneled January 21, 1975,541 F.2d 373 (3d Cir. 1976); United States v. Craig,528 F.2d 773 (7th Cir. 1976)(Tone J.,concurring), adopted en banc 537 F.2d 957 (7th Cir. 1976)(per curiam), cert. denied 425 U.S. 973 (1976); Kerr v. United States District Court,511 F.2d 192 (9th Cir. 1975), affd. 426 U.S. 394 (1976); Car v. Monroe Manufacturing Co.,431 F.2d 384 (5th Cir. 1970), cert. denied 400 U.S. 1000 (1971). When the court is confronted by a claim of privilege not firmly embedded in Federal law, however, the court may consider state law in determining whether "reason and experience" require the particular privilege to be accorded recognition. See Lora v. Board of Education of the City of New York,74 F.R.D. 565, 576 (E.D.N.Y. 1977) ("Strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy"). See also Trammel v. United States,445 U.S. 40↩ (1980), where the Supreme Court looked to the trends in state law of divesting the accused in criminal trials of the privilege to bar adverse spousal testimony, and concluded that "reason and experience" no longer justified having such a privilege.
21. Because appeal in the instant case would lie to the Second Circuit, where possible we will follow the law established in that circuit for purposes of our determination here. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971). 22. This section was amended in 1977, as part of a larger enactment, to bring within its scope a "public officer or public employee," to state affirmatively that a witness before a grand jury is permitted to disclose his own testimony, and to raise the offense from a class B misdemeanor to a class E felony. N.Y. Penal Law sec. 215.70 (McKinney 1977), in its prior form, applied only to the public officers and employees who were directly involved in or about a grand jury room or proceeding. McKinney's supplementary practice commentary states that the prior language afforded opportunities for grand jury information to be leaked, with relative impunity, by public servants who, though not as closely associated with the proceeding, were knowledgeable concerning it. The author of the supplementary practice commentary surmises that this circumstance, coupled with the expansion of the scope of those who may examine grand jury evidence, supplied the justification for the expanded scope of the section. The legislature, sensitive to disclosures of information concerning grand jury information, substantially increased the penalties from a class B misdemeanor to a class E felony. Under N.Y. Penal Law sec. 70.00-2 2(e), 3, 3(b) (McKinney 1987), the term of imprisonment for a class E felony (non-violent) shall be fixed by the court, and shall not exceed four years. The minimum term shall be no less than a year. A fine (up to $ 5,000) may be imposed in addition to imprisonment. N.Y. Penal Law sec. 60.05-7 (McKinney 1987). The term "performance of official duties" has seldom been interpreted by the New York courts. One commentator has noted generally, however, that with respect to prosecutors, the performance of duties clause under rule 6(e), Fed. R. Crim. P., may permit limited disclosures that are "directly incidental to the preparation and presentation of the criminal case, such as disclosures made in the course of preparing witnesses, disclosures during discovery proceedings, as well as during trial." Similarly disclosures by a prosecutor to his "secretary, law clerk, or paralegal would be regarded as a routine disclosure closely tied to the prosecutor's role in conducting the grand jury proceeding." Beale & Bryson, 2 Grand Jury Law & Practice, sec. 7.07 (1986). 23. Rule 6(e) provides in relevant part: (e) Recording and Disclosure of Proceedings. * * * (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court. (3) Exceptions. (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to (i) an attorney for the government for use in the performance of such attorney's duty, and (ii) such government personnel * * * as are deemed necessary * * * to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law. * * * ↩
24. There have been several cases involving claims arising under Federal law where either the government or a private litigant has sought the release or disclosure of state grand jury materials, despite an assertion that the materials are privileged. In those cases the courts have found that the privileged nature of the materials under state law was not controlling, but that the Federal common law was the source of any privilege. See, e.g., United States ex. rel. Woodward v. Tynan,757 F.2d 1085 (10th Cir. 1985) (civil case under False Claims Act alleging that defendants had filed fraudulent claims against the state medicaid program); Lucas v. Turner,725 F.2d 1095 (7th Cir. 1984); Socialist Workers Party v. Grubisic,619 F.2d 641 (7th Cir. 1980); McArthur v. Robinson,98 F.R.D. 672 (E.D. Ark. 1983) (civil rights actions under 42 U.S.C. section 1983). In Socialist Workers party v. Grubisic, supra;Lucas v. Turner, supra; and United States ex. rel. Woodward v. Tynan, supra, the courts of appeal recognized that under the principles of comity, the better practice is for the Federal court to defer any action on disclosure requests until the party seeking disclosure shows that the state supervisory court has considered the request and has ruled on the continuing need for secrecy. Nevertheless, the decisions in these cases also recognized that a state order cannot foreclose a Federal court from access to materials if a Federal district court determines that disclosure is essential in a case properly before it. Applying the principles and case law developed under rule 6(e), and after analyzing whether a "particularized need" had been shown, the courts in those situations have then proceeded to make a determination as to what extent the materials deserved protection under Federal law. See, e.g., Lucas v. Turner, supra and McArthur v. Robinson, supra.
Unlike the the cases cited above, however, we are not called upon to determine whether grand jury materials or information should be disclosed, for disclosure has allegedly occurred. Thus, the privileged nature, if any, of the information contained in the letter has been compromised. In any event, we make no pretext about having any power to issue orders authorizing disclosure or grand jury materials. See Hajecate v. Commissioner,90 T.C. 280, 292 (1988); Kluger v. Commissioner,83 T.C. 309, 315-319 (1984); Graham v. Commissioner,82 T.C. at 311-314↩ (Wilbur, J., concurring). 25. We also note that petitioner has not called into question the propriety of the summons enforcement proceedings, nor has he alleged that the summons authority was not used in good faith. United States v. LaSalle National Bank,437 U.S. 298 (1978); United States v. Powell,↩ 379 U.S. 48 (1964).
26. Petitioner has alleged generally that the safeguards of the Fourth and Fifth Amendments apply here. However, we do not find that these facts fall squarely under those provisions. We note that the Fourth Amendment protects against "unreasonable searches and seizures" while the corresponding protective provisions of the due process clause of the Fifth Amendment have been called into play where evidence is seized from an individual in a manner so outrageous that it shocks the court's conscience, thus requiring the court to exclude the evidence from its consideration. See Dixon v. Commissioner,90 T.C. 237 (1988); Proesel v. Commissioner,73 T.C. 600 (1979), and cases cited therein. In order to invoke those protections a taxpayer must establish that illegal means of obtaining evidence were used. See, e.g., United States v. Payner,447 U.S. 727 (1980); Alderman v. United States,394 U.S. 165, 183 (1969); United States v. Wade,388 U.S. 218, 240 n. 31 (1967). A mere allegation that the evidence was obtained in violation of the Fourth and Fifth Amendments is insufficient. In the absence of any evidence to the contrary, we believe the sole inquiry here is whether respondent obtained evidence in contravention of a Federal statute or rule of procedure, specifically rule 6(e). However, in terms of discussing the allegations that an "intrasovereign" violation occurred in this case, we will discuss and apply by analogy, where appropriate, some of the principles developed by this Court in the post-Janis cases arising under the Fourth Amendment. See Blackforge v. Commissioner,78 T.C. 1004 (1982); Guzzetta v. Commissioner,78 T.C. 173↩ (1982). 27. The exclusionary rule also serves to protect judicial integrity. United States v. Payner,447 U.S. 727 (1980); United States v. Janis,428 U.S. 433, 446,458 n. 35 (1976). However, the Supreme Court has suggested that the idea of judicial integrity is best viewed as having been merged in the deterrence rationale, and for that reason has no independent vitality. See United States v. Janis; supra; United States v. Ajlouny,629 F.2d 830, 840 (2d Cir. 1980),cert. denied 449 U.S. 1111 (1981) (the independent significance of the imperative of judicial integrity "has now been discounted substantially, if not completely"). 28. Since the Janis decision, the Supreme Court has also recognized that no deterrent purpose would be served by excluding evidence when the officials were acting in good faith. United States v. Leon,468 U.S. 897 (1984); Massachusetts v. Sheppard,468 U.S. 981 (1984). In Kluger v. Commissioner,83 T.C. 309 (1984), we refused to suppress grand jury materials where the government relied in good faith on the validity of a rule 6(e) order. See also Gluck v. United States,771 F.2d 750 (3d Cir. 1985) (even assuming IRS summonses sought to be enforced were based on information obtained in violation of grand jury secrecy, conduct of IRS agents in relying on facially valid rule 6(e)↩ order did not so taint the investigation as to render enforcement of summonses an abuse of the court's process). Although petitioner has asserted that both state and Federal officials lacked "good faith" during the course of this proceeding, we find this case is distinguishable from those previously cited because the validity of a warrant or court order has not been called into question. Therefore, we specifically decline to address the issue of whether the parties acted in good faith. 29. In early 1980, the U.S. Attorney informed the Nevada District Court of the Government's misstatements in connection with prior rule 6(e)↩ orders. The District Court then entered an order permitting disclosure of grand jury material to the taxpayer, but did not grant a retroactive, "curative" order with respect to prior improper disclosures to the IRS. 30. See, e.g., Pizzarello v. United States,408 F.2d 579 (2d Cir. 1969), cert. denied 396 U.S. 986 (1969) (records seized by IRS for purposes of criminal tax prosecution for evading wagering taxes also excluded in subsequent civil tax proceeding); Vander Linden v. United States,502 F. Sup. 693↩ (S.D. Iowa 1980) (records seized by IRS agent, participating in joint investigation of narcotics trafficking for purposes of criminal prosecution for tax evasion were suppressed in subsequent civil proceeding). 31. We note that since the alleged violation in this case occurred, the IRS has adopted internal guidelines and procedures for the use of Federal as well as state grand jury materials. Section 9267.1, Internal Revenue Manual (Criminal Investigation) (December 10, 1984) provides: 6. Because of various problems associated with information developed by state grand juries, access to and use of information developed by a state grand jury depends upon the law of the particular state involved. Therefore, District Counsel should be consulted for legal advice prior to Service acceptance of such information. We decline to address whether respondent, had the guidelines been in effect during 1979, properly followed these procedures for the Internal Revenue Manual is not for the protection of the taxpayers. As such, Manual requirements are merely directory and not mandatory and noncompliance does not render respondent's actions invalid. See Vallone v. Commissioner,88 T.C. 794, 808 (1987), and cases cited therein; accord Levy v. Commissioner,T.C. Memo. 1987-609↩. 32. We find this case to be distinguishable from the facts set forth in our recent opinion in Hajecate v. Commissioner,90 T.C. 280 (1988). There, respondent determined deficiencies in the taxpayers income tax using grand jury material obtained pursuant to rule 6(e) orders which concededly did not meet the standards later enunciated in United States v. Baggot,463 U.S. 476 (1983), or United States v. Sells Engineering, Inc.,463 U.S. 418 (1983). In Hajecate, we concluded that because the evidence which respondent sought to use in preparing for trial was grand jury material and its use would constitute a new disclosure, respondent must first obtain a new rule 6(e) order from the district court. To do so respondent would be required to demonstrate particularized need. It is undisputed that there were no orders authorizing disclosure of grand jury materials for use in this proceeding. Further, respondent's evidence here, other than perhaps the letter, does not consist of grand jury material. Such conclusion, however, will not bar us from applying the holding of Hajecate to the instant case if respondent does attempt to use any grand jury material (fitting with the guidelines described in this opinion as well as Hajecate↩) at trial in this case without first obtaining an appropriate court order.